In the Matter of Leonard W. BURKA.

No. M–39–80.

District of Columbia Court of Appeals.

Argued En Banc May 28, 1980.

Decided Oct. 21, 1980.

Jacob A. Stein, Washington, D. C., with whom Robert F. Muse, Washington, D. C., was on the brief, for respondent.

Edwin Yourman, Asst. Bar Counsel, Washington, D. C., with whom Fred Grabowsky, Bar Counsel, Washington, D. C., was on the brief, for the Board on Professional Responsibility.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

FERREN, Associate Judge:

This disciplinary matter is before the court on a recommendation of the Board on Professional Responsibility (Board) that respondent be disbarred. In reply, respon-

dent asserts that he was suffering from a mental disability when he appeared *pro se* before the Hearing Committee, and that the Board accordingly denied him due process when it declined to grant his request for hearing *de novo* before the Hearing Committee. We reject that contention,[1] adopt the recommendation of the Board, and order disbarment.

## I.

On January 30, 1979, the District of Columbia Bar (petitioner) instituted formal disciplinary proceedings against respondent based upon a referral by Superior Court Judge Margaret A. Haywood. Respondent was charged with violating six disciplinary rules in the Code of Professional Responsibility: (1) DR 9–102(A), failure to deposit funds of client in a separate account; (2) DR 9–102(B)(2), failure to place securities in a safe place "as soon as practicable"; (3) DR 9–102(B)(3), failure to "maintain complete records of all funds" of a client coming into his possession; (4) DR 9–102(B)(4), failure to deliver promptly to his client (the estate) property owned by the ward; (5) DR 1–102(A)(4), "dishonesty, fraud, deceit, or misrepresentation"; and (6) DR 1–102(A)(5), conduct "prejudicial to the administration of justice."

Respondent did not file an answer, but he participated—and conducted his own defense—at the Hearing Committee proceeding on April 25, 1979. He testified in his own behalf but offered no other witnesses or documentary evidence. At the conclusion of the hearing, respondent requested and received seven days within which to submit to the Hearing Committee a written explanation of the withdrawals and expenditures of the estate funds that he concededly had commingled with his own.[2] He

failed to deliver that explanation. On June 21, 1979, the Hearing Committee found:

1. That Respondent had practiced law in the District of Columbia for 21 years with no prior discipline assessed against him, and that he has an "a–v" rating in Martindale Hubbell.

2. That on May 12, 1975, Respondent was appointed successor conservator of the Estate of Rose E. Leonard, adult ward, by the Superior Court of the District of Columbia (Civil Action No. 7034–74), and that Respondent was removed as successor conservator on July 14, 1977.

3. That between October 10, 1975 and May 21, 1976, Respondent made 15 separate unauthorized withdrawals from the estate checking account in the total amount of $41,000.00.

4. That from July 16, 1975 to August 2, 1977, Respondent made deposits from unidentified sources into the estate checking account in the total amount of $29,446.

5. That after Respondent's removal as successor conservator of the estate, the Auditor Master found him accountable as of September 27, 1977, for a balance of $37,390.20, of which $11,661.00 represented missing funds.

6. That by December 14, 1977, Respondent had paid into the estate the total balance for which he was then accountable.

7. That the Auditor Master also assessed Respondent $50.00 to be paid to the Clerk of the Superior Court, but the record did not reveal whether or not this charge had been paid.

8. That Respondent himself removed the moneys from the Ward account but claims to have no recollection of how he

---

1. We also reject respondent's contentions that (1) the Board's findings and recommendations reflect a fundamental misunderstanding of the purpose of disciplinary proceedings and are inconsistent with the weight of the evidence, and that (2) the court should reject the Board's recommendation of disbarment in view of the mitigating factors allegedly present in this case.

2. At the hearing, respondent testified that he had commingled the conservatorship estate with his own funds and, for that reason, did not file a response to the petition. Respondent said he was aware of the seriousness of such improper administration of the conservatorship account and admitted he had made a grievous mistake and had acted improperly. Respondent made no claim at that time that his misconduct was the result of a mental disorder.

spent or otherwise used the diverted money and had never searched his records to try to find out.

The Hearing Committee concluded there was clear and convincing evidence that respondent had violated the following disciplinary rules:

(1) DR 9–102(A), in that Respondent failed to keep all moneys from the ward's account deposited at all times in a separate, identifiable bank account;

(2) DR 9–102(B)(3), in that Respondent did not maintain complete records of all the funds of the ward's account coming into his possession and did not render appropriate accounts regarding these funds;

(3) DR 9–102(B)(4), in that Respondent did not promptly pay over to the Court on behalf of the ward all the funds in Respondent's possession which the ward's account was entitled to receive;

(4) DR 1–102(A)(4), in that Respondent's unauthorized withdrawals of money for his own use from the ward's account constituted dishonesty and deceit; and

(5) DR 1–102(A)(5), in that Respondent's conduct was prejudicial to the administration of justice when he did not turn over assets of the ward account promptly to the Court or to the conservator who succeeded him, when he failed to submit bank statements to the Auditor upon request, and when he failed to cooperate with Bar Counsel on this matter.[3]

Two members of the Hearing Committee recommended disbarment; the third member recommended a five–year suspension.

On August 17, 1979, respondent's counsel filed a Motion to Stay Proceedings Before the Disciplinary Board and Motion for an Order Remanding this Matter to the Hearing Committee for Purposes of Reopening the Record for the Taking of Additional Testimony. In support of the motion counsel asserted that (1) respondent had not conferred with counsel in preparing for the hearing, nor had counsel been present at the hearing to assist respondent; (2) an emotional disorder had prevented respondent from presenting a proper defense or presenting evidence available to him; (3) respondent was currently being treated by a psychiatrist whose findings corroborate respondent's inability to evaluate, prepare, and assist in his defense; (4) respondent failed to take advantage of his right to call available character witnesses; (5) "although [r]espondent was aware of his problem, he was unable to cope with it because of a mental disability;"[4] and (6) in order to present the mitigating circumstances, expert testimony is required.

Petitioner opposed the motion on the ground that any evidence relating to respondent's character, reputation, and mental condition could be put directly before the Board in the form of affidavits. The Board heard the motion on September 13, 1979. Although the Board concluded that respondent had not established a sufficient basis for granting the motion, it offered respondent an opportunity to enlarge the record (through reopened proceedings before the Hearing Committee) if he voluntarily would agree to refrain from the practice of law until his disciplinary proceeding had been terminated.[5] In a letter from his

---

**3.** The Hearing Committee found no evidence to support the charge that respondent had violated DR 9–102(B)(2) (failure to place securities in a safe place).

**4.** In support of his motion, respondent submitted a letter dated August 15, 1979, from Dr. Sidney Shankman, his psychiatrist. Dr. Shankman was of the opinion that respondent was suffering from "Anxiety Neurosis with Associated Depression" which required "intensive outpatient psychotherapy (at least twice weekly for a period of many months)." The doctor concluded that "his apparent refusal to address his predicament was a barometer" of "his incapacity to adequately function in the face of his overwhelming distress." Despite these problems, Dr. Shankman also wrote that "there is no suggestion, at this time, of the [respondent's] being unable to exercise reasonable judgment re: the affairs of others."

**5.** A transcript of that Board hearing is not included in the record before this court. However, in its written order of September 28, 1979, denying respondent's motion, the Board explained:

counsel dated September 18, 1979, respondent "decline[d] the Board's [offer]; and ... argue[d] that the Board's suggestion confronts him with an untenable dilemma which causes him to forego one right if he is to be allowed to assert another."

On October 29, 1979, respondent submitted a memorandum for consideration by the Board, attaching statements from clients, members of the District of Columbia Bar, and others. In response, Bar Counsel filed his brief and modified his earlier recommendation, suggesting that the alleged misconduct should result only in a suspension, not in disbarment.

On March 27, 1980, the Board issued an Opinion and Recommendation to this court, adopting the Hearing Committee's findings and unanimously recommending that respondent be disbarred. Respondent filed exceptions.

## II.

Respondent urges the court to reject the Board's recommendation of disbarment, contending that the Board's denial of his request for hearing *de novo* before the

Hearing Committee violated due process. More specifically, respondent contends that (a) an attorney facing possible disbarment is entitled to a full opportunity to be heard; (b) this right includes more than a mere opportunity to be physically present at a disciplinary proceeding; it presupposes a hearing at which the attorney's mental faculties are sufficient to help advance his defense, absent which disbarment offends the Constitution; (c) the facts demonstrate that respondent was mentally incompetent at the time he appeared before the Hearing Committee; (d) respondent asserted his right to a new hearing in a timely manner; (e) the Board erred in conditioning his due process right to a new hearing on his willingness to give up the practice of law (*i. e.,* his right to earn a livelihood) pending completion of the disciplinary proceeding; and (f) given the Board's (and ultimately this court's) substantial reliance on the Hearing Committee proceeding, respondent's inability to develop his defense at this "critical stage" has resulted in serious injury. We conclude that this argument has no merit.

A. Initially, we note that this court's disciplinary rules, D.C.App. R. XI, call for

---

The Board concluded that respondent had not established to its satisfaction that the motions should be granted because the grounds advanced and the reasons offered in support of the motion were insufficient.

\* \* \* \* \* \*

The Board then determined, however, that, if respondent were willing to voluntarily agree that he would not engage in the practice of law until these proceedings were terminated, there could be no possible injury to the public, whether because he was currently suffering from or might suffer a recurrence of any alleged mental incapacity or for any other reason. In those circumstances we believed that to permit respondent the opportunity to enlarge the record, even in the face of our conclusion that he had not established an adequate basis for being given that privilege, would be acceptable, and even in the light of the seriousness of the charge against him and the recommendation of the Hearing Committee. Upon examination of the entire record before us, which includes participation by the respondent on his own behalf that reflects an understanding of the issues before the Committee, we concluded that respondent had been given the same opportunity for a full and fair hearing as that provided to any other member of the Bar against whom a serious

complaint is made. We were not persuaded, on the basis of our review of the entire record, that he was, at the time of the hearing, incapable of adequately responding to the charges.

In the March 27, 1980, Opinion and Recommendation of the Board on Professional Responsibility, the Board elaborated its reaction to the proffered psychiatric testimony:

The Board concluded that Respondent had not established to its satisfaction that the motions should be granted because the grounds advanced and the reasons offered in support of the motions are insufficient. For example, not only was the letter from the psychiatrist rather weak, but he conveniently found that although Respondent was incapable of taking care of his own affairs he was quite capable of taking care of others. Nor was the Board persuaded by the psychiatrist's conclusion that Respondent was suffering from "anxiety neurosis" to the extent that he was incapable of representing himself before the Hearing Committee. It was the Board's opinion that many people suffer from anxiety when faced with disciplinary proceedings, and consequently, there was nothing unique about the anxiety of the respondent in this case.

suspension of an attorney (without reaching the issue of ethical responsibility) during the period in which he or she is incapacitated by mental infirmity. *Id.* § 16. The rules contemplate, for example, the Board's taking the initiative for such suspension by applying to this court "for an order requiring the respondent to submit to an appropriate examination" when the Board "has good cause to believe that the mental or physical condition of the respondent is relevant to the subject matter of the complaint and is a factor which should be considered by it." *Id.* § 16(2); *see id.* § 16(6) ("the burden of proof shall rest with the Board"). If this court grants the petition, the court may suspend the attorney from practice for an indefinite period, holding any pending disciplinary proceeding in abeyance. *Id.* § 16(3). These provisions, therefore, contemplate a situation where the Board seeks to protect the public immediately, as a preventive measure, whether it has yet pressed charges or not.

Nothing on the face of § 16(2) compels the Board, in a particular situation, to evaluate or find "good cause" to ask for a mental or physical examination; the rule merely provides an available option, in the Board's discretion. The rules, therefore, do not limit such initiative to the Board. They also contemplate a respondent attorney's seeking–and "immediately" receiving–a suspension from practice, in lieu of discipline on the merits of a pending charge, "[i]f, during the course of a disciplinary proceeding, the respondent contends that he is suffering from a disability by reason of mental or physical infirmity or illness, . . . which makes it impossible for the respondent adequately to defend himself." *Id* § ·16(4). Thus, a respondent attorney confronted by disciplinary charges can avoid them by suggesting his or her own "mental or physical infirmity or illness," thereby triggering an "immediate" suspension from the practice of law "until a determination is made of the respondent's capacity to continue to practice law." *Id.* § 16(4).

In summary, if the Board finds "good cause" for suspension under § 16(2), it may seek a court order to that effect and thus hold in abeyance any ethical determination. If the Board, however, does not find "good cause" to sidetrack pending charges, the respondent unilaterally may do so under § 16(4) by accepting temporary suspension (which, as under § 16(2), does not imply ethical culpability).

Respondent does not contend the Board has violated Rule XI, § 16 (or any other rule provision). He argues, however, that the Board violated constitutional due process by failing to invoke its discretionary authority under § 16(2) to seek a mental examination (to which respondent would have agreed without a court order), and then to remand under § 7(3) for *de novo* consideration of the matter by the Hearing Committee. Put another way, respondent in effect argues that, on the basis of his proffer of Dr. Shankman's letter and other evidence of his mental infirmity at the time (but only at the time) of the Hearing Committee proceeding, due process required the Board to remand for a *de novo* hearing, without conditioning the remand on cessation of practice pending the outcome of the proceeding. He therefore takes the position that the Board's condition, which essentially would have required him to invoke his own § 16(4) option,[6] was unconstitutional. We turn to that inquiry.

■ B. Without question, an attorney "subject to disciplinary proceedings is entitled to due process." *In re Wild,* D.C.App., 361 A.2d 182, 184 (1976) (citing *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)). As respondent, however, acknowledges, "[i]t is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) (citations omitted).

---

**6.** Respondent contends that he no longer was mentally incapacitated at the time of the hearing before the Board; thus, he had no basis at that time for triggering an immediate suspension under § 16(4). In other words, the need for any suspension from the practice of law had become moot, and thus a forced suspension, he argues, was fundamentally unfair.

Although the Supreme Court consistently has held that due process requires some type of hearing before an individual is finally deprived of a property interest, the court on occasion has permitted temporary denial of such an interest pending application of full procedural safeguards.[7] In making the due process determination, we are to consider three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).]

As to the first two factors, we note that any attorney has an interest in retaining a license to practice law, without having to risk a disciplinary hearing at which he or she is not represented by counsel and is not mentally capable of self–representation. In respondent's case, however, the procedures suggested by the Board would have remedied any prejudice he may have suffered because of his alleged mental impairment before the Hearing Committee[8] at that proceeding, had respondent been represented by counsel (or been capable of coping with his alleged mental condition), he could–and presumably would–have invoked his option to take a suspension under § 16(4) if the Board, apprised of the allegation, had not already proceeded under § 16(2). Therefore, the Board's condition for reopening the proceeding (*i. e.*, that he suspend his practice) offered respondent an opportunity to proceed just as he would have originally. It is therefore ironic–and fallacious–for respondent to argue that he has a constitutional right to contest disciplinary charges at this stage, without suspension from practice, when he concededly would not have had that right if his mental infirmity had been revealed, at the outset, before the Hearing Committee.[9] The procedures suggested by the Board, moreover, were entirely consistent with the public's interest in protection against possible harm from respondent's practice of law.

C. Having waived the opportunity afforded him, respondent has subjected himself to a ruling on the merits of his conduct. Respondent conceded that he knowingly had commingled estate funds with his own, *see* note 2, *supra*, a violation of DR 9–102(A) (requiring deposit of client funds in a separate account). The record also supports the Hearing Committee's find-

---

7. *Compare Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (no evidentiary hearing required prior to termination of social security disability benefits); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (sustaining validity of procedures whereby federal employees dismissed for cause receive pre–dismissal notice of action sought, copy of charge, reasonable time to file response, an opportunity for oral appearance, and a post–dismissal evidentiary hearing) *with Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (generally requiring a hearing before a person may have property seized under a writ of replevin); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (requiring procedure to determine whether there is reasonable possibility of a judgment against a driver as a result of an accident before a license may be suspended for failure to post security under Georgia's uninsured motorist statute); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (prohibiting termination of welfare benefits before an adversary hearing); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (invalidating statute providing for prejudgment garnishment without notice to the debtor or prior hearing).

8. In view of this conclusion, we find it unnecessary to reach the question whether respondent was not capable of defending himself before the Hearing Committee and thus whether he had a right to any rehearing at all.

9. We do not understand respondent to challenge the constitutionality of D.C.App. R. XI, § 16(4); but even if his argument could be construed to do so, we conclude that a temporary suspension from the practice of law pending final disposition of disciplinary charges, when an attorney alleges his own mental impairment, comports with due process. *See* note 7 *supra*.

ings and conclusions, adopted by the Board, that respondent failed to maintain complete records and render appropriate accounts of client funds, DR 9–102(B)(3); failed to pay over promptly funds which his client's account was entitled to receive, DR 9–102(B)(4); engaged in dishonesty and deceit in making unauthorized withdrawals of client funds for his own use, DR 1–102(A)(4); and engaged in conduct prejudicial to the administration of justice in failing to turn over assets of the client account promptly to the court or to the successor conservator, and in failing to submit bank statements to the Auditor upon request, DR 1–102(A)(5).[10] Accordingly, we agree with the Board's recommendation of disbarment. An order to that effect shall be entered.

*So ordered.*

GALLAGHER, Associate Judge, concurring:

I concur in the court's disposition, but wish to add some comments.

In this case, what apparently gave rise to this appeal are these passages in the Board's order denying a remand and the opinion and recommendation of the Board,* respectively:

> The motion of respondent to stay proceedings before The Board on Professional Responsibility and for an order remanding this matter to the Hearing Committee for purposes of reopening the record for the taking of additional testimony is denied. A letter to the Chairman of the Board from respondent's attorney indicates that he has misunderstood the basis for the Board's decision, making a brief explanation desirable. *The Board concluded that respondent had not established to its satisfaction that the motions should be granted because the grounds advanced and the reasons offered in support of the motion were insufficient.* We believed, accordingly, that the case should

be set for argument on the merits as soon as was reasonably convenient.

> The Board then determined, however, that, if respondent were willing voluntarily to agree that he would not engage in the practice of law until these proceedings were terminated, there could be no possible injury to the public, whether because he was currently suffering from or might suffer a recurrence of any alleged mental incapacity or for any other reason. *In those circumstances we believed that to permit respondent the opportunity to enlarge the record, even in the face of our conclusion that he had not established an adequate basis for being given that privilege, would be acceptable, and even in the light of the seriousness of the charge against him and the recommendation of the Hearing Committee. Upon examination of the entire record before us, which includes participation by the respondent on his own behalf that reflects an understanding of the issues before the Committee, we concluded that respondent had been given the same opportunity for a full and fair hearing as that provided to any other member of the Bar against whom a serious complaint is made. We were not persuaded, on the basis of our review of the entire record, that he was, at the time of the hearing, incapable of adequately responding to the charges.* [Order of the Board on Professional Responsibility, Bar Docket Number 77–78, September 28, 1979 (emphasis supplied).]

In its subsequent opinion and recommendation, however, the Board stated:

> *Despite the seriousness of the charge against Respondent and the Board's conclusion that Respondent had not established to its satisfaction that the matter should be remanded for further testimony, the Board, nevertheless, offered to allow Respondent to enlarge the record if he voluntarily would agree not to engage*

---

10. We do not reach the question whether respondent's failure to cooperate with Bar Counsel in this matter violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

* See Brief for Respondent, Leonard W. Burka, at 4–16.

188

*in the practice of law until these proceedings were terminated.* The Board felt that such a precaution was necessary in order to prevent any possible injury to the public whether because Respondent was currently suffering from or might suffer a recurrence of any alleged incapacity. Respondent declined the offer and his motion for remand was denied. [Opinion and Recommendation of the Board on Professional Responsibility, Bar Docket Number 77–78 (footnotes omitted).]

I question the wisdom of concluding a respondent before the Board had no entitlement to the relief sought and then ruling that the relief nevertheless will be granted if a condition is met. I say this because this court in its rules (Rule XI, § 7(3) of the Rules Governing the Bar of this Court) quite naturally requires the Board to avoid inconsistent dispositions. If the Board should persist in granting relief by grace though stating there is no entitlement, subsequent respondents will contend that in fairness the Board should also grant them relief by grace notwithstanding that the Board finds no entitlement, because the Board must essentially afford uniform treatment of all respondents.

It requires little imagination to visualize that, unless the Board's approach in this case is nipped in the bud, the Board will find it is in a self–imposed precedential thicket from which it will be difficult to extricate itself.