### In re E. David HARRISON.
### No. M–128–82.

District of Columbia Court of Appeals.

Argued Jan. 27, 1983.

Decided May 26, 1983.

Edwin Yourman, Deputy Bar Counsel, Washington, D.C., with whom Fred Grabowsky, Bar Counsel, was on brief, for petitioner, the Board on Professional Responsibility.

Lawrence Speiser, Washington, D.C., with whom John P. Racin, Washington, D.C., was on brief, for respondent.

Before NEWMAN, Chief Judge, BELSON, Associate Judge, and KELLY *, Associate Judge, Retired.

NEWMAN, Chief Judge:

The Board on Professional Responsibility recommended a year and a day suspension of respondent Harrison for the commingling and misappropriation of client funds. We hold that the Board's finding that Harrison had misused his client's funds in violation of the Code of Professional Responsibility is supported by the record and adopt the recommended sanction of a year and a day.

## I

On October 12, 1979, E. David Harrison, an attorney who specializes in real estate transactions, and his client, Mr. Hart, endorsed a check received in settlement of a personal injury matter Harrison had been handling for Hart. The funds were deposited into Harrison's general office account. Shortly thereafter Mr. Hart began a series of requests for his portion of the settlement and for payment of medical bills out of the settlement as per the agreement Hart and Harrison had made. Harrison claimed he was extremely busy with a complex real estate matter at the time and that he was not intentionally evading his client. The Board found to the contrary. On December 3, Harrison wrote Hart a check which was returned for insufficient funds. The balance in the general office account had fallen below the amount owed Mr. Hart.[1] The dishonoring of the check was in violation of

an oral agreement with the bank to extend instant credit to cover all checks. Harrison claims that he was unaware that the account had become so depleted. His "sloppy" bookkeeping techniques, including a failure to keep a running balance of his checking accounts, contributed to this lack of knowledge.[2]

On December 20, Harrison paid Hart his share of the settlement. However, he did not pay the medical bills as per the agreement until about January 3, 1980. Meanwhile Hart filed a complaint with the Board on Professional Responsibility on January 8, 1980. This complaint was subsequently dismissed when Harrison wrote Bar Counsel on February 27, 1980, implying that payment to Mr. Hart had been delayed because an unexpected writ of attachment had been issued to the District of Columbia National Bank on this account in an unrelated incident. It was later revealed that the Superior Court attachment was not served until December 13.

Harrison fired his secretary in May 1980. She subsequently submitted materials to Bar Counsel which led to a reopening of this complaint. After reinvestigation, the Hearing Committee recommended that Harrison be publicly censured. Bar Counsel, who had originally sought disbarment, urged a 2-year suspension before the Board. The Board recommended that this court suspend Harrison from practice for a year and a day, based upon a finding that he misappropriated client funds that he had commingled with his own. We adopt the Board's recommendation.

## II

Harrison is charged with the commingling and misappropriation of his client's

---

* Judge Kelly was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

1. Between November 21, 1979 and December 20, 1979, the account containing Hart's monies did not have sufficient funds to pay him his portion of $1,302.31, and the account did not have sufficient funds to pay the additional medical expenses until January 3, 1980.

2. Harrison claims he felt secure with his bookkeeping practice because of the overdraft agreements with the various banks. However, between October 2, 1979 and December 21, 1979, a total of 11 checks were dishonored by three banks with which he had such overdraft agreements.

funds. Both parties agree that commingling occurred although Harrison attempts to justify his actions by claiming he was unaware of the prohibition against commingling.[3] Harrison contends that he was so preoccupied with a complex real estate matter that he did not realize that the balance in his office account had fallen below the amount he was to hold for Mr. Hart. Thus he argues, as the drawing on client funds for his own use was unintentional, it cannot constitute misappropriation and no greater sanction than a censure should be levied.

■■■ There are no cases in the District of Columbia defining misappropriation. Accordingly, we take this opportunity to adopt the definition used in New Jersey, e.g., misappropriation is "any unauthorized use of client's funds entrusted to him, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Wilson,* 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979). This definition makes clear that improper intent is not an element to be considered in determining whether there has been a misappropriation. This is consistent with the language of DR 9–102 which, unlike other disciplinary rules,[4] does not require scienter; rather, it is essentially a per se offense. Consequently, once the running balance of Harrison's office account fell below the amount held in trust for Hart,[5] misappropriation had occurred.

The Board found that Harrison did not consciously set out to misappropriate Hart's funds but rather did so as the result of his failure to keep proper records. However, this factor must be weighed against Harrison's other actions which the Board found to illustrate more than a mere technical violation of the Code. Harrison evaded Hart's request for restitution for several weeks by refusing to take his calls or respond to his letters. When he finally paid Hart, the check was returned for insufficient funds. This evidence suggests that the reason for the evasion of Hart was Harrison's belated discovery of the balance in the account.

■■■ Disbarment has been imposed in cases of misappropriation. *See In re Burka,* 423 A.2d 181 (D.C.1980), and *In re Quimby,* 123 U.S.App.D.C. 273, 359 F.2d 257 (1966) (per curiam).[6] However, in this case we find that the Board's recommended sanction of suspension for a year and a day was appropriate. The facts in this case were less egregious than those in the cases where disbarment was ordered. Both *Quimby, supra,* and *Burka, supra,* involved the conscious withdrawal and use of client funds, and in the latter case, the withdrawals were periodic, whereas Harrison's misconduct occurred when he relied on his account balance rather than his running balance. Thus, Harrison's defense of inadvertence, while insufficient to defeat the charges against him, did justify a lesser sanction than imposed in *Quimby* and *Burka.*

*Affirmed.*

■■■■■■■■■

---

3. It strains common sense to think that a practitioner with 20 years' experience would be unaware of the prohibition against commingling. Furthermore, practitioners in the District are subject to this jurisdiction's code of professional ethics whether or not they are aware of each prohibition.

4. Compare DR 9–102(A) and DR 9–102(B) with DR 8–102(A) and (B). The latter contains the word "knowingly".

5. In this case, that point was when he wrote a check to the IRS on November 20 (thus committing those funds) and his running balance fell below the level, even though his account showed sufficient funds until December 7.

6. The attorneys in these cases were found guilty of "misconduct"; however, their misconduct was misappropriation of client funds.