**In the Matter of John R. BUCKLEY, Respondent.**

**No. 86–1003.**

District of Columbia Court of Appeals.

Argued Dec. 17, 1986.
Decided Dec. 9, 1987.*

---

\* This opinion was released in typed form prior to     printing.

Samuel McClendon, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Joan L. Goldfrank, Washington, D.C., for the Bd. on Professional Responsibility.

William J. Garber, with whom Dennis M. Hart, Washington, D.C., was on the brief, for respondent.

Before PRYOR, Chief Judge, MACK, Associate Judge, and NEBEKER, Associate Judge, Retired.**

NEBEKER, Associate Judge, Retired:

In its Report and Recommendation dated May 12, 1986, the Board on Professional Responsibility (the "Board") unanimously agreed with the Hearing Committee's conclusion that Respondent John R. Buckley, by commingling and misappropriating the funds of a client, violated two disciplinary rules of the Code of Professional Responsibility: DR 9–103(A) and DR 1–102(A)(4). Despite its unanimity regarding the violations committed by respondent, the Board was divided on the appropriate sanction to be imposed. A majority of the Board concurred with the Hearing Committee and thus recommended that respondent be suspended from the practice of law for a period of two years. In a dissenting opinion, three members of the Board recommended disbarment. Bar Counsel filed an exception to the sanction agreed upon by the Board's majority. Rather than suspension, Bar Counsel argues, the appropriate sanction for knowing and intentional misappropriation of client funds is disbarment. We conclude, after considering the particular circumstances surrounding respondent's misconduct, disbarment is the sanction that should be imposed.

The factual circumstances leading up to this disciplinary matter were as follows: In May 1981, Thomas Arthur retained respondent for the purpose of having him pursue a personal injury claim. The claim was settled in July 1981 and, pursuant to a signed retainer agreement, respondent took $8,220 to cover his own one-third contingency fee. In addition, a settlement sheet

---

** Judge Nebeker was an Associate Judge of this court at the time the case was argued. His status changed to Associate Judge, Retired, on September 1, 1987.

signed by Arthur provided that he would be paid $11,163 from the settlement proceeds and that the remaining $5,288 would be held by respondent for the purpose of paying Arthur's medical bills. Between July 1981 and June 1983, a question existed as to whether Medicare would pay Arthur's medical bills; consequently, during the twenty-three month period respondent had control of the $5,288 portion of the settlement. Instead of maintaining that sum in a separate trust account, either to be used for its intended purpose or paid to Arthur, respondent spent the $5,288 to pay his own personal and professional expenses. According to the report of the Board, respondent "used the bank account, in which the withheld funds were deposited, as an office account." The account balance was reduced to $12 without the respondent having paid either the medical bills or Arthur.

From December 1982, until June 1983, Arthur's wife sought to have respondent resolve the question about payment of the medical bills so that the $5,288 in withheld settlement funds could be disbursed. In June 1983, Arthur's wife filed a complaint against respondent with Bar Counsel. The following month respondent distributed $4,910 of the withheld amount to Washington Hospital Center and the balance of the $5,288 was paid to Arthur.

Having concurred with the Hearing Committee's finding that respondent commingled and misappropriated his client's funds, a majority of the Board recommended a two-year suspension. This sanction was chosen for two reasons: First, the Board concluded that the misconduct at issue occurred prior to our decision in *In re Hines*, 482 A.2d 378 (D.C.1984), where the rule calling for disbarment in misappropriation cases was made prospective.[1] Second, the Board concluded that our rulings in disciplinary proceedings prior to *Hines* "made a distinction between misappropriation involving gross misconduct of a corrupt nature where disbarment was the appropriate sanction, and misappropriation of a non-corrupt nature where long-term suspension

was the sanction." With respect to this respondent's misconduct, the Board accepted the Hearing Committee's finding that there was "no corrupt intention to convert the client's funds." Thus, the absence of a corrupt intent, coupled with the fact that there was confusion surrounding who actually was to receive the withheld funds, led the Board to conclude that suspension and not disbarment was the appropriate sanction. Suspension, the Board maintains, is consistent with this court's rulings prior to *In re Hines, supra*.

Bar Counsel takes exception to the Board's recommendation of suspension on the grounds that the sanction is inconsistent with this court's past rulings—those before and after *Hines*. Stressing that respondent knowingly and intentionally misappropriated his client's fund, Bar Counsel supports the position of the Board's minority that the sanction should be disbarment.

■ The difference between a two-year suspension, as recommended by the Board, and disbarment, as urged upon us by Bar Counsel, is that under the latter sanction respondent would be unable to practice law for an additional three years. Under Rule XI, § 21(2) governing the Bar, an attorney who has been disbarred other than for a conviction of a crime involving moral turpitude, must allow at least five years to pass from the date of disbarment before applying for reinstatement. A similarity exists between the two sanctions in that with either one respondent would have to petition for reinstatement and submit to a hearing to determine his fitness to once again practice law. Rule XI, § 21(5).

Our standard of review for recommendations by the Board is set forth in Rule XI, § 7(3) of the District of Columbia Bar Rules:

> In considering the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of

1. We note, at this juncture, that *Hines* also involved, as does the instant case, commingling of funds. In *Hines, supra,* we admonished that

disbarment had been the usual sanction since 1972 for commingling cases. 482 A.2d at 384.

record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted. The rule mandates that "we enforce a general sense of equality in the sanctions handed out." *In re Smith,* 403 A.2d 296, 303 (D.C.1979). At the same time, we recognize that the Board may exercise broad discretion in determining the sanction to be imposed subject "only to a review for abuse in that discretion's exercise." *Id.*

In the instant matter, the Board engaged in an effort to categorize the past misappropriation cases as being of either a "corrupt" or "non-corrupt" nature. Although the dichotomy seems to be based on a distinction between misappropriations of a permanent nature versus those which are only temporary, we find the categorizing rather imprecise and unhelpful. This jurisdiction has already adopted as its definition of misappropriation "any unthorized use of client's funds entrusted to [the lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Harrison,* 461 A.2d 1034, 1036 (D.C. 1983) (quoting *In re Wilson,* 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979)). The foregoing definition of misappropriation does not admit of a further differentiation of cases of unauthorized use based on the degree of corruptness involved.

■ We perceive the Board's attempt to distinguish between types of misappropriation as, in actuality, an effort to separate and evaluate cases based on the various mitigating and aggravating factors present in each particular occurrence of unauthorized use. Undoubtedly, before imposing a sanction, the Board should consider any extenuating or aggravating circumstances. As we have stated:

Many factors must be considered in imposing a specific discipline, *i.e.,* the nature of the violation, the mitigating and aggravating circumstances, the need to protect the public, the courts, and the legal profession. Within the limits of the mandate to achieve consistency, each case must be decided on its particular facts.

*In re Haupt,* 422 A.2d 768, 771 (D.C.1980). More recently, our decision in *In re Hines, supra,* noted that "[t]here may be instances of misappropriation which, for any number of reasons, may call for a lesser sanction [than disbarment]." 482 A.2d at 386. Thus, while reaffirming our statement in *In re Hines,* which allowed that "disbarment will ordinarily be the sanction imposed by this court" in misappropriation cases, we reiterate that in the wake of *Hines* there is not a *per se* rule requiring disbarment. *Id.*

The Board's recommendation that respondent be suspended for two years was made on the finding that there were a number of mitigating factors present in this case. The Board considered the fact that for a period of time there was confusion or uncertainty as to who was responsible for Arthur's medical bills; consequently, the question of who should receive the portion of the settlement funds earmarked for payment of the bills remained open. In addition, respondent's misconduct was found to be limited to a single matter involving one client. The ultimate harm suffered by Arthur was considered to be relatively slight in that once respondent paid the medical bills the client received only $380 of the settlement funds at issue. Another circumstance which guided the Board was respondent's otherwise clean disciplinary record of thirty years. Finally, the Board considered the fact that respondent acted in a candid manner with respect to detailing his various actions.

■ We conclude that notwithstanding the factors the Board cites as mitigating respondent's misconduct (and despite, as we said earlier, the "non-corrupt" characterization given to this particular misappropriation), the appropriate sanction in this matter is disbarment. This result is necessitated in light of the rulings in *In re Burton,* 472 A.2d 831 (D.C.), *cert. denied,* 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *In re Burka,* 423 A.2d 181 (D.C. 1980); and *In re Quimby,* 123 U.S.App.D.

C. 273, 359 F.2d 257 (1966). If we were to adopt the Board's majority recommendation of suspension, we would be permitting the type of "inconsistent dispositions for comparable conduct" which lead to "the asymmetry that D.C. Bar R. XI, § 7(3) was intended to avoid." *In re Reback*, 513 A.2d 226, 230 (D.C.1986).

The Board's majority cites *In re Harrison*, 461 A.2d 1034 (D.C.1983) as support for its recommendation. Although the attorney in *Harrison* was suspended, the facts and circumstances surrounding the misappropriation in that disciplinary action vary in a significant fashion from the facts of the present unauthorized use of funds. In *Harrison*, the Board found that the attorney "did not consciously set out to misappropriate [the client's] funds but rather did so as the result of his failure to keep proper records." 461 A.2d at 1036. We adopted the recommendation of suspension in that case based on the attorney's claim that the misconduct was the result of "inadvertence." Moreover, we distinguished the misconduct and resulting suspension in *Harrison* from the misconduct leading to disbarment in both *Burka* and *Quimby, supra,* on the grounds that the latter two cases "involved the conscious withdrawal and use of client funds." In the instant case, the Hearing Committee stated that it could not "ascribe the label 'inadvertent' to respondent's conduct ... [and] [w]hile he may not have had a corrupt intent, it cannot be denied that his use of his client's funds for his personal purposes was knowing and continuing." We view respondent Buckley's misconduct to be comparable to that which led to disbarments in *Burka* and *Quimby*.

There is some question whether the sanction to be imposed today will be inconsistent with our disposition in *In re Cefarrati*, M–140–82 (D.C. June 28, 1983). With respect to that, we note our decision in *In re Hines, supra,* expressed our agreement with the Board that "misappropriation of client funds in cases involving more

than simple negligence [should] ordinarily result in disbarment." 482 A.2d at 386. We recognize, however, we did qualify our notice to the bar in *Hines* by saying that disbarment would "ordinarily be the sanction" in "future misappropriation cases." *Id.* Nonetheless, we must consider that a sanction imposed pursuant to a disciplinary proceeding is, in effect, a judgment of an attorney's continued fitness to practice his profession, *District of Columbia Bar v. Kleindienst*, 345 A.2d 146, 147 (D.C.1975), rather than a form of punishment for past transgressions. It follows, therefore, that the sanctions we impose are not circumscribed by *ex post facto* restrictions. Consequently, we may properly consider *In re Hines, supra,* in determining the appropriate sanction for respondent's misconduct—even though his unauthorized use occurred before our decision in *Hines.*[2] Indeed, *Hines* did not announce a new rule with exclusive prospectivity. That opinion observed that even as to commingling violations the court in the twelve years past had imposed disbarment as "the usual sanction" in twenty of twenty-eight such cases. 482 A.2d at 384. *Hines* created no right to be free of the risk of disbarment for misappropriation conduct preceding that decision.

It is therefore ORDERED that respondent, John R. Buckley, is disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion.

MACK, Associate Judge, dissenting:

I would follow the recommendation of the Board and the Hearing Committee.

**2.** In *Hines,* the misappropriation "may not have been intentional." 482 A.2d at 386. A two-year suspension was imposed. The "knowing" and

"continuing" nature of respondent's unauthorized use in the instant case sets it apart from the misconduct in *Hines.*