In the Matter of Nicholas
**ADDAMS, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 88–867.

District of Columbia Court of Appeals.

Argued March 7, 1989.

Decided Aug. 11, 1989.

R. Kenneth Mundy, Washington, D.C., for respondent.

Samuel McClendon, Asst. Bar Counsel for Sp. Litigation, with whom Thomas E. Flynn, Bar Counsel, Washington, D.C., was on the brief, for the Office of Bar Counsel.

Joan L. Goldfrank, Executive Atty., Washington, D.C., for the Bd. on Professional Responsibility.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and GALLAGHER, Senior Judge.

PER CURIAM:

This matter is before the court on the Report and Recommendation of the Board on Professional Responsibility (the Board). The Board unanimously found that respondent Addams violated DR 9–103(A) (misappropriation) and DR 1–102(A)(4) (dishonesty) as a result of intentionally misappropriating client funds and then misrepresenting the fact to his client. Four members of the Board recommended that respondent be disbarred and four members recommended that he be suspended for a year and a day. Addams contends that the record does not support the Board's findings, and, alternatively, that the appropriate sanction is a year and a day. We hold that the record supports the Board's findings that Addams violated DR 9–103(A) and DR 1–102, and in view of our decision in *In re Buckley*, 535 A.2d 863 (D.C.1987), we order that Addams be disbarred.

I

Respondent Addams was charged with violating DR 9–103(A)[1] and DR 1–102(A)(4)[2] by the unauthorized use of funds given him by his client, Norlisha Jackson, for placement in a trust account to pay the holder of Ms. Jackson's promissory note. On September 11, 1982, Addams wrote a check on the trust account to the noteholder for $530.37. The check was dishonored by the bank, as the trust account balance on that day was $334.05, although Addams was accountable for $1,291.73. The shortage in the trust account was due to Addams' withdrawal of monies from it for his own use.

Addams, appearing *pro se* before Hearing Committee Number Ten, had several explanations for the withdrawals. First, he testified that he had specific authorization from Ms. Jackson in 1982 to withdraw funds from the trust account as a payment toward his fees.[3] He also asserted that if he did engage in misappropriation it was inadvertent, resulting from emotional strain caused by the death of an uncle who had been his surrogate father. The Hearing Committee found that Addams had misappropriated funds in violation of DR 9–103(A) because he had used his client's funds for unauthorized purposes and thus for his own use, and that in so doing he had been dishonest in violation of DR 1–102(A). Recognizing that disbarment is the usual sanction for knowing misappropriation in the absence of extenuating circumstances, the Committee viewed Addams' actions as amounting to commingling since "he withdrew fees at his o[w]n discretion and demonstrated a 'reckless disregard' of the security of Ms. Jackson's fund." The Committee determined that Addams' behavior warranted a sanction similar to that in *In re Hines*, 482 A.2d 378 (D.C.1984), suspension for two years.

Before the Board, Addams, who was now represented by counsel, asserted that he was privileged to withdraw his fees from the trust account under his retainer agreement with Ms. Jackson.[4] The Board re-

---

1. DR 9–103 Preserving Identity of Funds and Property of a Client.
   (A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
   (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
   (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

2. DR 1–102 Misconduct.
   (A) A lawyer shall not:
   . . . .
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

3. There is no dispute that Ms. Jackson owed Addams legal fees. At the time of the hearing, the fees amounted to approximately $14,000.

4. The relevant portion of the fee agreement provides:
   I authorize Addams to deposit any checks, drafts, money or any form of money, made

manded the case to the Hearing Committee to receive the agreement into evidence and any testimony presented by Bar Counsel or Addams regarding the agreement. The Hearing Committee issued a supplemental report in which it concluded that the retainer agreement did not authorize Addams to withdraw his fees from the escrow account, and affirmed its earlier findings and recommendations of a two-year suspension.

The Board unanimously agreed that Addams had committed the alleged disciplinary violations, but was divided on the appropriate sanction. Four members of the Board recommended disbarment, noting the recent decision of *In re Buckley*, 535 A.2d 863 (D.C.1987), and four other members recommended suspension for a year and a day because of mitigating circumstances, following *In re Cefaratti*, M–140–82 (D.C. June 28, 1983).

## II

Addams contends that the language in the retainer agreement gave him actual authority to withdraw his legal fees from the escrow account, or, alternatively, that if it did not grant him such authority, he reasonably misconstrued it in good faith to have done so, and that its very existence undermined Ms. Jackson's testimony since she was uncertain about the existence of the agreement.

■ We agree with the Board that the agreement did not authorize Addams to withdraw funds in 1982 from the escrow account to pay his legal fee.[5] The agreement authorized Addams to deposit settle-

ment checks and checks for any judgments that he might receive into his trust account and to deduct his fees from those amounts. Addams' testimony before the Hearing Committee was to the same effect, and thus belies his contention that he reasonably misinterpreted the agreement in good faith. He did not rely on the agreement to support his 1982 withdrawals and specifically described it during his testimony in terms which would not have authorized the withdrawals. *See also In re Harrison*, 461 A.2d 1034, 1036 (D.C.1980) (DR 9–102(A) does not require scienter; essentially a per se offense).

The Board also properly denied Addams' request to overturn the Hearing Committee's credibility finding regarding Ms. Jackson. *See In re Thornton*, 421 A.2d 1, 2 (D.C.1980). There is considerable evidence corroborating her testimony.[6] Ms. Jackson testified that, at Addams' request, she wrote a letter to Bar Counsel in an effort to help Addams in these proceedings in which she stated that she had authorized the withdrawals in 1982.[7] In preparation for the hearing, she reviewed her records, which included an accounting from Addams, and ascertained that her authorization had occurred in 1983, not 1982. The accounting showed payments to Addams from the trust account on February 11, 1983, and February 17, 1983, supporting Ms. Jackson's testimony that the authorization occurred in 1983; it did not show the withdrawals made by Addams in 1982, thus undercutting Addams' credibility since the failure to enter the 1982 withdrawals im-

out to myself and Addams, into his account for collection, and further authorize Addams to deduct fee balance owing to him and to make disbursements as set forth above for expenses, court costs, etc., unless otherwise agreed in writing.

5. *See In re Hines, supra,* 482 A.2d at 382 & n. 14 (review of whether Board committed error of law).

6. We find no merit to Addams' contention that the proceedings are fatally flawed because the Hearing Committee, on remand, did not consider the effect of the existence of the retainer agreement on Ms. Jackson's credibility. At the initial hearing, the Committee heard Addams

refer to the agreement, and Ms. Jackson testified that it was possible there was an agreement. The Committee credited Ms. Jackson's testimony, and, on remand, reaffirmed its previous findings. There was no reason for the Committee to do more on remand than it did. Moreover, at the remand hearing, Addams, who was represented by counsel at this point, had every opportunity to examine Ms. Jackson regarding the agreement, but chose not to.

7. The complainant in this case was the defendant in the lawsuit that Addams had brought on Ms. Jackson's behalf in which Ms. Jackson was ultimately successful, the court voiding the promissory note and saving her a substantial amount of money.

plied that he knew he was not authorized to withdraw those funds. Addams' credibility was further undercut by his failure to make the authorization argument in his answer to the complaint, stating instead that "the check somehow slipped between the cracks."

Nor was the Board required to determine who owned the money that Addams was holding in escrow.[8] The Board concluded that regardless of who owned the money, Addams had no right to it. This finding is clearly supported by the evidence. Addams testified that he was holding the funds in escrow and was authorized by Ms. Jackson to make payments on the note to the noteholder whenever it was determined who the noteholder was; only if the note was declared invalid would the money be returned to Ms. Jackson. Hence, Ms. Jackson was the legal owner, and the noteholder was the beneficial owner, of the escrowed funds. *See In re Vogel*, 382 A.2d 275, 280 (D.C.1978); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 103 comment b (1979). Thus, Addams needed authorization from both Ms. Jackson and the noteholder before withdrawing funds for his personal use. Since Bar Counsel presented sufficient evidence of Addams' failure to obtain authorization from Ms. Jackson, Bar Counsel proved misappropriation under DR 9–103(A). *See In re Harrison, supra*, 461 A.2d at 1036. Moreover, it is inconceivable, on the record before the Board, that the noteholder would have authorized Addams to use the money in escrow to pay legal fees owed Addams by Ms. Jackson. Not only did the noteholder suffer nonpayment of the full amount due when one of Addams' checks was rejected by the bank, and thereafter received full payment, but he also is the complainant in this proceeding.

Although the Hearing Committee did not make an express finding of intent in determining that Addams' misappropriation was an act of dishonesty in violation of DR 1–102(A)(4), there is clear and convincing evidence in the record from which the Board could find the requisite intent.[9] *See In re Smith*, 403 A.2d 296, 302 (D.C.1979). Addams testified that he knowingly and intentionally withdrew funds from the trust account for which he was otherwise accountable to Ms. Jackson. The Hearing Committee could properly credit Ms. Jackson's testimony that she did not authorize Addams to take any money from the account until 1983. Furthermore, the fact that Addams had given Ms. Jackson a false accounting supported the conclusion that Addams knew the 1982 withdrawals were unauthorized and deliberately tried to hide them from Ms. Jackson.[10]

### III

Usually, in determining the appropriate sanction, the court is guided by D.C.Bar Rule XI, § 7(3) to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." Where the Board is evenly split between recommending a year and a day

---

8. Because Addams held the money in a separate bank trust account that he had established for money he received from clients the Board found that there was no commingling of client funds with personal funds.

9. The Board was "hard pressed" to understand how the Hearing Committee had concluded that Addams' action in withdrawing funds showed only "reckless disregard" as opposed to intentional misappropriation. The Board pointed to Addams' testimony that he knowingly and intentionally withdrew the funds in 1982, and subsequently attempted to cover up his misappropriation in a false accounting. While the August 1982 overdraft might have resulted from recklessness due to his failure to keep account of the running balance, his misappropriation occurred when he made the first withdrawal based on an authorization the Board concluded he did not have. In the Board's view, Adams "could have not been reckless with respect to his authority to withdraw fees in 1982. Either he had that authority or he did not." Accordingly, the Board found that Addams' misappropriation was intentional. Contrary to Addams' contention on appeal the Board did not usurp the fact-finding role of the Hearing Committee, but simply used the facts that the Committee found to reach a conclusion that Addams acted with intent.

10. In addition, even reckless disregard of client funds constitutes dishonesty in violation of DR 1–102(A)(4). *See In re Hines*, 482 A.2d 378, 380 (D.C.1984).

suspension and disbarment, however, the court must focus on the proposition that "[w]ithin the limits of the mandate to achieve consistency, each case must be decided on its own particular facts," *In re Haupt,* 422 A.2d 768, 771 (D.C.1980), and, in so doing, examine the basis for the underlying difference between the recommended sanctions.

The four members of the Board who recommended disbarment relied on *Buckley, supra,* 535 A.2d 863, which had been decided after the Hearing Committee had filed its reports with the Board. Buckley was disbarred for violating DR 9–103(A) and DR 1–102(A)(4) by commingling and misappropriating client funds which he was supposed to hold in trust to pay his client's medical bills. Bar Counsel had argued, as it does in the instant case, that the appropriate sanction for knowing and intentional misappropriation is disbarment. *Id.* at 865. The court in *Buckley,* quoting *In re Hines, supra,* reiterated that while there is no per se rule requiring disbarment in cases of misappropriation, "disbarment will ordinarily be the sanction imposed by this court" in such cases. *Id.* at 866.

The members of the Board recommending disbarment found that Addams' "misappropriation, like Buckely's, was knowing and intentional," and they viewed Addams' concealment of the withdrawals in the false accounting that he gave to his client as an aggravating factor. They found no mitigating factors to form a "basis to impose any sanction other than that which is called for by *Buckley,*" interpreting *Buckley* to stand for the proposition that "the absence of prior discipline is not a factor which serves to mitigate a sanction in a misappropriation case." They rejected as irrelevant the substantial legal fees Ms. Jackson owed Addams since they viewed such consideration "the functional equivalent of arguing that Addams had no 'corrupt intent.'" They recognized, however, that:

... this is an unusual case. It is rare that an attorney comes before the disciplinary system with his client perfectly satisfied, brought there by one who was defeated by the lawyer's skillful efforts in litigation and charged with nothing

relating to the conduct that lead [sic] to complainant's defeat. Almost universally, misappropriation cases are brought to our attention by a client whose funds have been misappropriated and who wishes vindication. This is not that case.

But they declined to view client satisfaction as having anything to do with sanction, concluding that it did not alter the Board's responsibility to protect "the entire consuming public."

The four members of the Board who recommended a suspension relied on six mitigating factors in concluding that "the extreme remedy of disbarment is inappropriate": (1) the absence of commingling, since all of the client's funds were properly deposited in a trust account; (2) withdrawals to pay a small portion of legal fees undisputedly owed Addams by his client; (3) client authorization for Addams to use some of the funds in 1983 to pay overdue legal fees, and, based on her "supportiveness" of Addams at the hearing, the likelihood that Ms. Jackson would have authorized the 1982 withdrawals had she been so requested; (4) the absence of harm to the client and complete client satisfaction with Addams' services; (5) misconduct limited to a single set of facts concerning a single client; and (6) Addams' practice of law for twenty-two years without disciplinary violations. They also noted that the complainant was the losing defendant in the client's lawsuit. Responding to the members of the Board recommending disbarment, those members in favor of suspension maintained that reliance on these mitigating factors was not an attempt to probe the degree of corruptness of Addams' intent but rather was required in order to avoid a "mechanistic *per se* approach that the court expressly eschewed in *Buckley* and *Hines.* We are not parsing the degrees of 'misappropriation'; we are, rather, determining how severely this Respondent should be sanctioned for his misconduct."

Generally, the relevant factors that are to be taken into account in determining the appropriate sanction in attorney discipline cases include any aggravating or mitigating circumstances surrounding the miscon-

duct. *In re Reback*, 513 A.2d 226, 231 (D.C.1986) (en banc). This includes the previous record of the attorney and the absence of prior disciplinary sanctions. *Id.* Thus, the court noted in *In re Hines, supra*, 482 A.2d at 384 & n. 19, that in twenty-eight misappropriation cases only twenty had resulted in disbarment, and that in many commingling cases in which disbarment was recommended, there were additional factors contributing to the court's decision, such as a prior disciplinary record, repeated instances of misconduct, or violations of other disciplinary rules.[11] However, in *Hines* the court put the Bar on notice that henceforth disbarment would be the usual sanction for misappropriation not involving simple negligence. *Id.* at 386–87. *Buckley* applied this principle.[12]

■ In *Buckley* the court imposed the sanction of disbarment notwithstanding the finding by the Board of five mitigating factors. Those factors were: (1) the confusion or uncertainty for a period of time about who was responsible for paying the medical bills; (2) the slight harm suffered by the client since Buckley eventually made the necessary payments; (3) misconduct limited to a single matter involving one client; (4) Buckley's candor in the disciplinary proceedings; and (5) his thirty years of practice without prior discipline. *Buck-*

*ley, supra*, 535 A.2d at 866. The court concluded that "notwithstanding the factors the Board cites as mitigating," the appropriate sanction for Buckley's conduct was disbarment, given the conscious and continuing nature of his misconduct. *Id.* at 866–67. The court did not have occasion to define the circumstances in which a less severe sanction than disbarment would be appropriate since it viewed the result to be required under prior rulings.[13] Although the prior decisions on which *Buckley* relied can be distinguished, *Buckley* controls the instant case.

*Buckley*, in short, has reaffirmed that disbarment is to be the usual sanction for intentional misappropriation of client funds, and further determined that disbarment is the appropriate sanction notwithstanding mitigating factors such as the prior disciplinary record of an attorney and the extent of harm suffered by the client. With those mitigating factors rendered irrelevant, we find no principled basis on which to impose on Addams a sanction other than that imposed on Buckley. The mitigating factors in Addams' case are strikingly similar to those in *Buckley;* although Addams' misconduct did not involve commingling, it did involve dishonesty, an aggravating factor, and while the complainant was the disgruntled defendant third-

11. *Compare In re Burton*, 472 A.2d 831, 848 (D.C.), *cert. denied*, 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984) (sanction of disbarment of attorney for improper commingling and misappropriation of funds buttressed by the fact that the respondent had recently been found to have misappropriated funds in another matter), *with In re Cefarrati, supra*, No. M–140–82 at 6–7 (citing as a mitigating factor before imposing suspension of a year and a day for misappropriation fact that respondent had no previous disciplinary violation in a career spanning thirty-four years).

12. After *Buckley*, the court has considered various mitigating factors in determining an appropriate sanction where an attorney has improperly dealt with client funds. *See In re Schneider*, 553 A.2d 206, 211–12 (D.C.1989) (alteration of credit card receipts submitted to law firm for reimbursement in violation of DR 1–102(A)(4), 30–day suspension). *See also In re Hessler*, 549 A.2d 700, 716 (D.C.1988) (commingling and misappropriation through simple negligence in violation of DR 9–103(A), six-month suspension).

13. The court cited *In re Burton, supra*, 472 A.2d 831 (disbarment for commingling and misappropriation in two separate cases and lying to Auditor–Master in defense of misconduct); *In re Burka*, 423 A.2d 181 (D.C.1980) (disbarment based on commingling and misappropriation, as well as various other disciplinary violations); and *In Quimby*, 123 U.S.App.D.C. 273, 359 F.2d 257 (1966) (attorney disbarred for intentionally misappropriating funds from estates of two clients because of failed investment). *Id. See also In re Moore*, 83–141 (D.C.App. June 10, 1983) (disbarment for intentional misappropriation and concealment involving a single client where amount misappropriated was $25,000, the Board finding no mitigating factors); *In re McClellan*, M–51–80 (D.C.App. Mar. 26, 1981) (disbarment for failure to disburse monies to client in three separate cases and failing to appear in scheduled proceedings in other cases); *In re McClean*, M–142–82 (D.C.App. Apr. 11, 1983) (disbarment for commingling, misappropriation, making false statement and presenting false evidence to Bar Counsel).

party noteholder, that circumstance does not warrant a different sanction since the funds in the escrow account were for the complainant's benefit as well.

Accordingly, it is

ORDERED that Addams shall be disbarred from the practice of law effective thirty days from the date of this opinion.

*So ordered.*