**In re Ernesto CLARKE, Respondent.**

No. 95–BG–1792.

District of Columbia Court of Appeals.

Argued Sept. 26, 1996.

Decided Nov. 7, 1996.

Elizabeth A. Herman, Senior Assistant
Bar Counsel, with whom Leonard H. Becker,

Bar Counsel, was on the brief for petitioner, the Office of Bar Counsel.

Melvin G. Bergman for respondent. Ernesto Clarke, pro se, was on the brief. Othello C. Jones also entered an appearance for respondent.

Before FARRELL, KING, and RUIZ, Associate Judges.

PER CURIAM:

This matter is before the court on the Report and Recommendation of the Board on Professional Responsibility ("the Board") that respondent, Ernesto Clarke, be disbarred from the practice of law in the District of Columbia, based on the Board's finding that respondent's misappropriation of client and third-party funds and professional conduct violated several disciplinary rules. We agree with the Board's recommendation and order respondent disbarred.

## I.

On December 27, 1994, Bar Counsel charged respondent, Ernesto Clarke, an attorney admitted to practice law in the District of Columbia, with misappropriation of client funds and failing to deliver funds promptly, in violation of Rules 1.15(a) and (b) (client property to be kept in separate account; prompt notification to client or third party when funds received on behalf of client or third party) and misleading his client into the belief that he would pay medical bills listed on a settlement sheet, in violation of Rule 8.4(c) (dishonesty, fraud, deceit, and misrepresentation) of the Rules of Professional Conduct.

The underlying facts were not in dispute. In 1990, Clarke agreed to represent Ms. Mary Narvaez, a Spanish-speaking domestic worker, on a contingency basis in a personal injury matter. Under a retainer agreement, respondent was to receive one-third of the

gross amount of settlement before suit and ten percent of any amount collected on her personal injury insurance policy. With Narvaez's consent, respondent executed an agreement with her treating physician, Dr. Avram Weinberg, to pay the doctor's fee for services out of any settlement proceeds obtained for Narvaez.

In February 1991, respondent received a check for $8,500 from the civil defendant's insurance company. Respondent deposited the check into a bank account ("account") designated as a business checking account in the name of "Law Offices of Ernesto Clarke." Checks drawn on the account carried the words, "escrow account." In late May 1991, respondent received a check for $4,904 from his client's personal injury policy, which he also deposited into his bank account. Under the terms of the retainer, respondent owed $5,486 to the client and $4,379 to Dr. Weinberg.

Respondent drew on the account by writing checks to others not connected with the Narvaez case, causing the balance to go below the amount needed to pay his client and her doctor. The end of the month account balances were as follows:

| | |
|---|---|
| February 1991 | 6,704.00 |
| March 1991 | 3,563.61 |
| April 1991 | 3,351.61 |
| May 1991 | 33,255.00 [1] |
| October 1991 | 749.34 |
| November 1991 | 464.71 |
| December 1991 | 127.93 |

Respondent presented a settlement sheet to Narvaez indicating the gross amount obtained for her ($13,404), expenses deducted ($185), attorneys' fees deducted ($3,508.73), deductions for payment of a radiology bill ($30), and Dr. Weinberg's bill ($4,379). In June 1991, respondent paid $5,486 to Narvaez.

Thereafter, while the respondent's "escrow account" purported to contain the sum owed to Dr. Weinberg, the balance in the account

---

**1.** On May 31, 1991, $25,000, unrelated to the Narvaez matter was deposited into respondent's account.

fell below the amount owed the doctor in October, November, and December 1991. In January 1992, after Weinberg's repeated requests for information and payment on his bill, respondent asked Dr. Weinberg to accept a check for $4,379 postdated to April 1, 1992. Respondent testified that during a telephone conversation with the doctor in January, he told the doctor that some unnamed person in the doctor's office authorized a twenty percent reduction of the medical bill in return for respondent's agreement to sign the authorization and assignment. Dr. Weinberg, however, testified that he did not know of any such arrangement, nor did any of his office staff have the authority to make such an agreement. There was no written acknowledgment of such an arrangement, nor did respondent discuss such an agreement with Narvaez.

In March 1992, respondent notified the doctor that he did not have funds sufficient to cover the postdated check. In April 1992, respondent mailed Dr. Weinberg a $2,500 check, which cleared. When respondent failed to remit $1,879, the balance of the bill due, Dr. Weinberg tried to cash the $4,379 check in July 1992, but it was returned for insufficient funds. Dr. Weinberg then filed an action in the Small Claims Branch of Superior Court obtaining a default judgment for $1,879 plus interest. To date, Dr. Weinberg has not received the remaining portion of the fee due to him.

On March 2, 1995, respondent represented himself before Hearing Committee No. Nine ("hearing committee") and admitted that his escrow account did not contain sufficient funds to pay his client and Dr. Weinberg. Respondent kept no records regarding the funds he removed from the account and he claimed that he had no knowledge concerning the use to which the funds were put, or the dates of their distribution. Respondent admitted that he was responsible for the funds and that he "was writing the check[s] in excess of what was due [him] and that's why

it [the account] fell short." "The doctor was not a high priority," respondent testified.

Ms. Narvaez testified[2] that she had assumed payment had been made to Dr. Weinberg and that when his office called to tell her that the doctor had not received payment, she became upset, nervous, and concerned. Dr. Weinberg testified that respondent told him during 1992 that "he had settled the case, that he had collected the funds and the he had spent the money that was to go toward my medical bill on himself because he was low on money."

Based on the facts presented, the hearing committee found that respondent's misappropriation of client funds did not fall into the narrow category of "simple negligent misappropriation" and that respondent had intentionally misappropriated funds of his client and a third-party doctor. The hearing committee also found that respondent failed to review bank records, keep accounting ledgers, or calculate his fees before withdrawing them from the account, and that he failed to promptly notify a third party of available funds in which the third party had an interest, concluding that respondent violated Rule 1.15(a) and (b). Furthermore, the committee found that respondent violated Rule 8.4(c) when he "dishonestly, fraudulently, and deceitfully" led his client to believe that he would promptly pay the full amount of her medical bills as acknowledged on the settlement sheet but did not do so. The hearing committee also concluded that respondent violated Rule 8.4(c) when he used funds collected on his client's behalf for his own purposes without the client's permission, authority, or knowledge.

The committee recommended disbarment because respondent intentionally misappropriated client and third-party funds and there were no extenuating circumstances present in this case to justify departure from such a sanction. The committee also recommended that respondent make restitution of

**2.** Ms. Narvaez's testimony in Spanish was translated into English by an interpreter. Early in Ms. Narvaez's testimony, the chairman of the hearing committee, realizing that he had forgotten to swear-in the interpreter, immediately administered the appropriate oath.

the balance owed on Dr. Weinberg's bill, with interest as of the settlement date.

## II.

■ Respondent raises several procedural objections relating to the pre-hearing and hearing stages of the proceeding. Specifically, respondent contends [3] that: (1) Dr. Weinberg's complaint against respondent was not under oath as required by D.C.Code § 11–2503(b) (1995 Repl.) and was therefore defective; (2) the petition instituting these proceedings was neither personally nor timely served; (3) the hearing committee chairman erred in failing to timely administer the oath to Narvaez's interpreter before receiving any testimony, and thus denied Clarke due process which entitles him to a new evidentiary hearing,[4] and, (4) he was denied discovery during the investigatory period and prior to the hearing. We conclude that all of these contentions are without merit.

■ First, there is no requirement that an ethical complaint be under oath. Bar Counsel is empowered "to investigate all matters involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of this Court which may come to the attention of Bar Counsel or the Board *from any source whatsoever*, where the apparent facts, if true, may warrant discipline." D.C. Bar R. XI, § 6(a)(2) (emphasis added); *In re Williams*, 513 A.2d 793, 795 (D.C.1986) (giving Board "the power and the duty 'to consider and investigate any alleged ground for discipline'"). Here, the investigation of respondent was initiated upon receipt of a letter written by Dr. Weinberg's attorney, who had represented the doctor in the civil suit against respondent and who was aware of

respondent's failure to pay the sums due to the doctor. Respondent mistakenly relies on D.C.Code § 11–2503(b) which requires formal charges in the petition to be made under oath, not the complaints made by clients or others to Bar Counsel. *See In re Morrell*, 684 A.2d 361 (D.C.1996) (D.C.Code § 11–2503(b) allows Bar Counsel, who is not personally a complainant, to verify the charges under oath based upon information and belief; Bar Counsel has no obligation to obtain sworn affidavits based upon personal knowledge to support every petition for attorney discipline.).

■ Second, even though respondent was not personally served, respondent acknowledged, in writing, receipt of the petition, requested more time to respond, submitted a responsive pleading and fully participated in the proceedings. At no time did the respondent claim the petition should be dismissed or raise a challenge to the court's jurisdiction over him. To be sure, D.C.Code § 11–2503(b) requires personal service. Even assuming, however, that failure to comply with the statute's requirements where there is actual notice constitutes a jurisdictional defect over an attorney admitted by the court to practice in the District of Columbia—a question we do not address in this case—the respondent waived the objection by submitting when he appeared and responded substantively to the charges. *Cf.* Super. Ct. Civ. R. 12(h)(1); *Cusimano v. First Md. Sav. & Loan*, 639 A.2d 553, 557 n. 5 (D.C.1994) (defense of lack of personal jurisdiction is waived if neither asserted by motion nor included in a responsive pleading); *Snyder v. Laboy*, 291 A.2d 194, 196–97 (D.C.1972). Finally, respondent mistakenly alleges untimeliness of the petition. D.C.Code § 11–2503

---

3. Respondent's exception to the Board's report sets forth nine issues. We address only those where respondent presented legal arguments.

4. Clarke also contends that there were flaws in Narvaez's testimony, including: 1) "whether the interpreter's relation to Narvaez was relevant in establishing the absence or presence of bias or interests in the outcome of the hearing"; 2) "whether the offer to make the recorded tapes of the hearing available to Clarke satisfy the constitutionally due process rights to cross-examine a

material witness." The latter contention is essentially an objection to the accuracy of the interpreter's translations, an issue we discuss later in this opinion. Any objections to the interpreter's relation to Narvaez were waived by Clarke when he failed to raise them at the time of the hearing. *In re James*, 452 A.2d 163, 168 (D.C.1982), *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983).

requires service thirty days from the *filing* of the petition with the court, not from the date that the draft petition is *submitted* by Bar Counsel for contact member review, as respondent contends.

■ Third, respondent contended, among other asserted improprieties, that Narvaez's interpreter was inaccurate, and that the proceeding was defective because the oath was administered to the interpreter after the start of the translation. As we discussed above, an interpreter translated Ms. Narvaez's testimony into English. Early in Ms. Narvaez's testimony, the chairman of the hearing committee, realizing that he had forgotten to administer an oath to the interpreter, immediately did so. In the oath made, the interpreter swore to translate accurately and faithfully, and the interpreter also swore that the testimony that had been translated up to that point had been accurately and faithfully translated. Respondent did not object or request that the earlier translation be repeated. Except for the accuracy claim, respondent waived all objections when he failed to raise them at the hearing. *In re James, supra* note 4. While respondent timely objected to the accuracy of the translation of two answers of the witness, the interpreter accepted one correction and disagreed with the other. The committee did not find the differences to be material, concluding that they did not undermine the witness's translated testimony or the evidence against respondent. On the record before us, we find no reason to disturb that finding. *See In re Cooper*, 591 A.2d 1292, 1294 (D.C.1991).

Finally, we reject respondent's claim that he was denied pre-hearing discovery. Respondent was informed, approximately a month before the hearing date, that he could make an appointment, on reasonable notice as provided by the Board's Rule 3.1, if he wished to view Bar Counsel's file *after* respondent had already requested certain information, which Bar Counsel had provided. Furthermore, exhibits, consisting primarily of respondent's own bank records, materials from his client file and letters sent to or by him, were served on respondent well in advance of the ten days required by the Board's rules. Respondent's claim that he did not have a copy of *Weinberg v. Clarke*, CA 93–2522 (D.C.Super. Ct. April 5, 1994), the case in which Dr. Weinberg sued to recover his fee, is frivolous because respondent was the defendant in that case.

### III.

■ We now turn to the substantive questions of whether respondent intentionally misappropriated funds and was guilty of professional misconduct for misleading his client that her medical bills had been promptly paid, and if so whether disbarment is the proper sanction. The Board agreed with the hearing committee's findings and conclusions in all respects and adopted its recommendation that respondent be disbarred. This court will accept the Board's and, by implication, the committee's findings of fact, unless they are unsupported by substantial evidence in the record, *In re Kennedy*, 605 A.2d 600, 603 (D.C.1992), and we will adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted. *See In re Temple*, 629 A.2d 1203, 1207 (D.C.1993).

■ "Misappropriation is defined as 'any unauthorized use of client's funds entrusted to [the attorney], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.' " *In re Pels*, 653 A.2d 388, 393 (D.C. 1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 58, 136 L.Ed.2d 21 (1996) (citations omitted). The inference of dishonest misappropriation may be drawn, in this case, where respondent acknowledged, and the bank records established, that the client's funds in his escrow account fell below the amount owed to his client and the third party. *See In re Ingram*, 584 A.2d 602, 603 n. 1 (D.C.1991).

■ Although we have repeatedly held that misappropriation is a *per se* offense,

making it unnecessary to prove improper intent, *In re Choroszej,* 624 A.2d 434, 436 (D.C.1992), here, improper intent may be inferred from respondent's admission that his financial difficulties at the time may have had an impact on the disappearance of the funds. Because of respondent's assertions that "the doctor was not a high priority," and that he [respondent] was "under some financial duress," combined with his failure to maintain adequate records, his misappropriation was clearly intentional rather than due to simple neglect. Therefore, the sanction for his misconduct is disbarment. *See In re Dulansey,* 606 A.2d 189, 190 (D.C.1992); *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc).

 Extenuating circumstances, which might be grounds for departing from usual sanction of disbarment, do not exist in this case. *See In re Addams, supra,* 579 A.2d at 192 n. 4, 198 (absence of prior discipline, admission of wrongdoing, cooperation with Bar Counsel, restitution to the client, subsequent proper bookkeeping practices or client satisfaction *not* extenuating circumstances for intentional misrepresentation). Therefore, respondent's lack of prior disciplinary history, his financial distress, and his cooperation with Bar Counsel do not qualify as mitigating factors sufficient to justify departure from the sanction of disbarment. Because respondent promised by his signature on the authorization and assignment to pay his client's medical bills out of the proceeds of settlement, the enforcement of such a promise is an appropriate use of the restitution provision of D.C. Bar R. XI, § 3(b) where, as in this case, the attorney enriches himself at the promisee's expense. *See In re Dietz,* 633 A.2d 850, 851 (D.C.1993) (restitution to client with six percent interest); *cf. In re Robertson,* 612 A.2d 1236, 1241 (D.C.1992) (restitution not permitted for client's damages). Although intentional misappropriation alone is sufficient to warrant disbarment, *see In re Addams, supra,* 579 A.2d at 190, respondent's dishonesty in leading his client to believe that her medical bills had been paid serves to aggravate the extent of his misconduct.

Accordingly, it is ORDERED that respondent, Ernesto Clarke, shall be disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion. It is further ORDERED that respondent shall make restitution to Dr. Avram Weinberg in the amount of $1,879, plus interest at the legal rate of six percent from the date of settlement, as a condition of his reinstatement to the Bar. D.C. Bar R. XI, § 3(b).

*So ordered.*