In re Chris H. ASHER, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 00–BG–765.

District of Columbia Court of Appeals.

Submitted April 10, 2001.
Decided May 24, 2001.

Chris H. Asher, pro se.

Joyce E. Peters, Bar Counsel, and Julia L. Porter, Assistant Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before WAGNER, Chief Judge, and SCHWELB and WASHINGTON, Associate Judges.

WAGNER, Chief Judge:

The Board on Professional Responsibility (Board) recommended that respondent, Chris Asher, be disbarred for misappropriating client and third-party funds and for other multiple violations of the Rules of Professional Conduct. Respondent's principal argument is that he was denied due process because the hearing was held in his absence. He also challenges the factual findings and legal conclusions of the Board. From the record of the proceedings, we conclude that respondent was given notice and an opportunity to appear at the hearing and defend, but he failed to do so. Further, we hold that the Board's findings are supported by the record and that the recommended sanction is appropriate; therefore, we adopt the recommendation.

## I. Procedural Background

### A. *Factual Summary*

Bar Counsel filed a Specification of Charges against respondent on December 23, 1998 alleging that he violated multiple provisions of the Rules of Professional Conduct, including misappropriation of client funds. A special process server made several attempts to serve respondent with a copy of the petition and Specification of Charges at his home during January and February, 1999. When the process server attempted to serve him on February 2, 1999, respondent denied that he was Chris Asher. Finally, on March 12, 1999, the process server, who recognized respondent as the same man he had encountered on February 2nd, served respondent at his office in the District of Columbia. After the affidavit of service was filed, the Board scheduled the hearing for May 17, 1999 and directed Bar Counsel and respondent to file their proposed exhibits by May 7, 1999. Bar Counsel filed and hand-delivered to respondent copies of Bar Counsel's proposed exhibits. Respondent never filed or served any proposed exhibits, and he never filed an answer to the Specification of Charges.

The Chair of the Hearing Committee (Chair) for the proceeding scheduled a pre-hearing conference for May 3rd. Since the Board was unable to reach respondent by telephone, the date was changed to May 5th, and the Board noti-

fied respondent via facsimile transmission. Respondent failed to answer or participate, and the Chair entered an order scheduling the hearing for May 17th, unless respondent filed a motion showing good cause for a continuance. The order also provided that because of respondent's failure to answer and participate at the pre-hearing, "any such motion [for continuance] shall be supported by an affidavit attesting to respondent's inability to proceed with the hearing on May 17th; and that any alleged disability shall entitle Bar Counsel to request an independent medical examination of Respondent." Respondent sent a letter to the Board indicating that he was experiencing "excruciating pain in [his] chest, neck, and entire left side of [his] body." The request was not supported by affidavit as required by the Order. Bar Counsel filed a response indicating that he had no objection to a continuance with the conditions that respondent make himself available for an independent medical examination by a physician selected by Bar Counsel and agree to an interim suspension pursuant to D.C.App. R. XI, § 13(c) (suspension of incapacitated attorneys). By Order dated May 20, 1999, the Chair continued the hearing to June 30 and July 1, 1999, with the proviso that no further extensions would be granted unless respondent and Bar Counsel agreed, or the Court found that respondent was unable to attend.

Between May 20, 1999 and the hearing date of June 30, 1999, the Board and Bar Counsel sent numerous letters to respondent and made several attempts to contact him. By letter dated June 28, 1999, respondent requested a further continuance "until such time as [he was] declared fit by [his] doctors." Respondent attached a letter from Dr. Morton Altschuler, stating that respondent "continues to complain of neck pain with radiation to the left arm and shoulder," and that he had been referred to a neurologist. Dr. Altschuler also indicated that he had recommended that respondent take a leave of absence until his tests and treatment were completed. Respondent called and informed the Board that he would not make himself available to participate by telephone in a pre-hearing conference on June 29, 1999, and that he would not attend the hearing on June 30, 1999. Respondent declined to provide a telephone number where he could be reached, and he did not appear at the hearing on June 30, 1999. Respondent traveled to London on July 3, 1999. The Hearing Committee proceeded with the hearing in his absence. Bar Counsel called ten witnesses and offered Bar Exhibits A–C and 1–40, all of which were admitted into evidence. On December 23, 1999, the Hearing Committee issued its report. The Hearing Committee found that respondent had engaged in the misconduct charged and concluded that the nature and extent of his misconduct warranted disbarment.

Respondent filed exceptions to the Hearing Committee's report, and the parties submitted briefs to the Board. The Board found that the Hearing Committee's factual findings were supported by the evidence and agreed with its conclusions and recommended sanction. Respondent filed exceptions to the Board's report and recommended sanction.

B. *Respondent's Due Process Challenge*

Respondent argues that he was denied due process in that the hearing was held in his absence in spite of his known medical condition which precluded his attendance. Thus, he contends, he was deprived of a fair hearing and the right to confront and cross examine the witnesses against him. Bar Counsel responds that respondent had an opportunity to appear

and contest the charges and to have the case continued a second time, if he provided evidence of the alleged disabling condition which precluded his attendance.

 "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Joint Anti–Fascist Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951)). Fundamental requirements of due process are notice and an adequate opportunity to appear and contest charges. *Id.* (citations omitted); *In re Shieh,* 738 A.2d 814, 816–17 (D.C. 1999); *Jerome Mgmt. v. District of Columbia Rental Hous. Comm'n,* 682 A.2d 178, 183 (D.C.1996). While respondent disputes the circumstances surrounding the process server's unsuccessful efforts to serve him initially, he does not dispute that the process server served him with a copy of the petition and Specification of Charges on March 12, 1999. His due process challenge centers upon the denial of his request for a continuance of the hearing which proceeded in his absence. We consider, therefore, the factors underlying the Board's decision denying respondent's request for a continuance.

The record demonstrates, as the Board and the Hearing Committee concluded, extensive efforts by the Hearing Committee, Bar Counsel and the Board to assure that respondent had an opportunity to be heard. After successfully avoiding service for several months, respondent requested and was granted a continuance of the first hearing date, which had been scheduled for May 17, 1999.[1] Although the Board had issued an order requiring that any motion for continuance be supported by an affidavit attesting to respondent's condition, respondent did not file such an affidavit with his request for a continuance of the May hearing. Instead, he sent a letter indicating only that his condition required a continuance and that he had an appointment for re-evaluation with his physician on May 11th and an MRI set for May 13th. Nevertheless, the Board continued the hearing until June 30th with the proviso for no further continuances without the consent of Bar Counsel or the court determination that respondent was unable to attend. Respondent did not present evidence or an affidavit, as required by the earlier Order, that he was unable to participate in the hearing on June 30th because of medical reasons. Neither respondent's letter nor the attached statement from his physician indicated that he was suffering from a condition which precluded him from participating in the hearing. As the Hearing Committee noted, respondent was able to travel to London on July 3, 1999, within days of the hearing in this disciplinary case. Since the Chair, Bar Counsel and the Board had made persistent efforts to provide respondent with an opportunity to provide evidence of his claimed illness, and respondent had failed to do so, and in light of a record showing that respondent had avoided at every turn proceeding with this matter, the Board concluded that denial of the continuance request was warranted and that proceeding with the hearing was not a denial of due process.[2] We agree.

---

1. The process server, by affidavit, attested to his efforts to serve respondent some eight times between January 12, 1999 and March 12, 1999, the date on which respondent acknowledges having been served. On one of these occasions, respondent denied that he was Chris Asher. The process server recounted these efforts to serve respondent and respondent's evasiveness in sworn testimony at the hearing.

2. Senior Bar Counsel reported prior to presenting witnesses that she had made countless

■ In the due process context, an opportunity to be heard at a meaningful time does not mean only at such time as one party finds it to be convenient. Consistent with due process, a tribunal may deny a request for continuance of a hearing, having considered various factors, including, *inter alia,* any lack of good faith and prejudice to the opposing party. *See Daley v. United States,* 739 A.2d 814, 817 (D.C.1999) (citations omitted). The decision to deny respondent's request for continuance is well supported by the record which shows that respondent had notice of the hearing and was given several opportunities to respond and participate; that he consistently sought to avoid participating in the proceedings; and that he failed to provide the requisite support for his claim of a disabling condition which prevented his participation in the proceedings.[3] As the Hearing Committee noted in this case, "another continuance would have served no useful purpose for Asher and would have been detrimental to the public interest." There was ample basis to conclude that respondent absented himself voluntarily and for the purpose of avoiding the proceeding. Such a voluntary absence does not deny due process, and the administrative tribunal may require the hearing to go forward under such circumstances.

*See In re Herndon,* 596 A.2d 592, 597 (D.C.1991). We find no abuse of discretion in its ruling in this regard. *See Kimes v. United States,* 569 A.2d 104, 109 (D.C. 1989) (whether constitutional right is at issue or not, the question of whether there was an abuse of discretion in ordering trial in absence of a defendant remains).

### C. *Respondent's Double Jeopardy Claim*

■ Respondent argues that the Board was precluded from holding a disciplinary hearing in connection with his representation of Michael Robinson because the same matter was considered by the Maryland Attorney Grievance Committee, and for cause shown, was sent before the Maryland Court of Appeals. Therefore, he contends that the matter should be held in abeyance until completed in Maryland. Disciplinary proceedings, including those seeking disbarment, do not invoke the proscriptions against double jeopardy. *See In re Sharp,* 674 A.2d 899, 900 (D.C.1996) (citations omitted). Proceedings to disbar an attorney are not intended for the purpose of punishment, but to protect the public from lawyers who engage in unethical conduct. *Id.* (citing *Attorney Grievance Comm'n v. Andresen,* 281 Md. 152, 155, 379 A.2d 159, 161 (1977)) (other citations omitted). Since disciplinary proceed-

---

calls to respondent and left messages explaining that the hearing would go forward on June 30th and July 1st, including a call the day before the hearing. She also sent him a letter via facsimile transmission to that effect.

3. The Board and Bar Counsel take the position that there was available a mechanism to respondent to have the proceeding held in abeyance because of his claimed medical condition under D.C.App. R. XI, § 13. Respondent maintains that Bar Counsel was required to file a petition for an independent medical examination under the terms of the rules and the Order of the Hearing Committee, if respondent appeared to be incapacitated. D.C.App. R. XI, § 13(e) provides in pertinent

part that "[i]f in the course of a disciplinary proceeding, the attorney claims to be suffering from a disability because of … physical illness …, which makes it impossible for the attorney to present an adequate defense, the Court shall enter an order immediately suspending the attorney from the practice of law until a determination is made of the attorney's capacity to practice law in a proceeding under subsection (c) of this section." Subsection (c) provides for the Board to petition the Court for a determination of incapacity. In light of our disposition of the due process issue, we need not decide here whether the rule precludes such a petition from being filed in court by an attorney.

ings are not criminal, double jeopardy principles do not apply.[4]

## II. Disciplinary Violations

The disciplinary violations arose out of respondent's involvement in four different matters. In two of them, respondent, who is not licensed to practice in Maryland, used the status of his part time law clerk, a recently licensed Maryland lawyer, to practice before the courts in Maryland. In another matter, respondent represented a couple in a personal injury case involving an accident that occurred in Virginia, although he is not licensed to practice there. The final matter arose out of respondent's representation of a woman in a dispute with a car dealership. The circumstances surrounding each of these matters are described below in more detail as they relate to the misconduct found. In addressing the merits, respondent relies principally on the unsworn statements in his brief. The Board found that respondent's statements—the same that were made below—did not "fairly put[ ] into issue" any of the violations found. Respondent does not address the record evidence nor does he contest a number of the ethical violations found by the Board.

### A. *Misappropriation, Commingling, and Other Violations in the Lartey Case*

The Larteys, Virginia residents, retained respondent to represent them in connection with a claim for damages for personal injuries arising out of an automobile accident which occurred in Virginia on February 8, 1996. Respondent never advised them that he was not licensed to practice in Virginia. In early January 1997, without discussing the matter with the Larteys, respondent agreed with the insurance carrier to settle Mr. Lartey's claim for $2,757.65, and Mrs. Lartey's, for $2,961.57. The insurance carrier sent checks in those amounts payable to each client and respondent as counsel, release forms for their signatures, and a request that no funds be distributed until the Larteys executed the releases. Without his clients' knowledge or consent, respondent forged their names on the checks and deposited them into an account which he used for personal and business expenses and entrusted funds. By January 31, 1997, respondent's account was overdrawn by $369.78, and he had not yet paid the Larteys' medical providers as required nor disbursed any funds to them.

When the insurance company had not received the executed releases by April 1997, it sent respondent a second set of forms. Respondent still did not inform the Larteys of the settlement, but he signed his name and had someone sign their names on the release forms and returned them to the insurance company sometime in May 1997. Having received several demands for payment from their medical providers, the Larteys called respondent and informed him that they would seek another attorney. When they went to retrieve their files, respondent told them that he was able to settle for only $750 each and that after deducting his contingent fee, they were due $500 each, and he would use the remaining funds to pay their medical providers. Respondent issued

---

4. For purposes of judicial economy, it may be prudent to allow the matter in the jurisdiction first obtaining jurisdiction over the matter to proceed to completion before acting locally. Our local Rule XI, § 11 provides an efficient mechanism for reciprocal discipline and the imposition of identical discipline or different discipline as the circumstances warrant. In this particular case, respondent is not a member of the Maryland Bar, and this jurisdiction where he is licensed to practice has a significant interest in investigating and disposing of complaints of misconduct against him, although related to proceedings in Maryland.

each of them a check for $500 at a time when his account was overdrawn by $183.35; however, he later deposited cash and other funds to cover the checks. Respondent never paid the Larteys' medical providers, and their delinquent accounts were reported to credit agencies.

In response to the ethical complaint filed by the Larteys, respondent falsely represented that he had their consent to sign the settlement checks and that he had made cash disbursements to them consisting of two $500 payments in August 1996 and $1711.50 and $1507.65 in April 1997 for a total of $3219.15. Respondent also created documents purportedly representing their receipt for these disbursements. The receipts were created by using forms signed in blank by the Larteys to allow respondent to obtain their medical records. Respondent urged the Larteys to withdraw their ethical complaint in return for his payment of their medical bills and additional funds, but they did not agree. As of the time of the hearing, respondent still had not paid any additional funds to, or on behalf of, the Larteys.

The Board concluded that respondent violated the following disciplinary rules in representing the Larteys, as charged by Bar Counsel: Rule 1.4(a) (failure to keep clients reasonably informed about status of their matters); Rule 1.4(c) (failure to inform client of settlement offer promptly); Rule 1.15(a) (failure to maintain client's and or third party's property separate from the lawyer's own property, *i.e.*, commingling or intentional or reckless misappropriation of funds); Rule 1.15(b) (failure to notify client promptly of receipt of funds for client or third party); Rule 1.17 (failure to deposit entrusted funds into separate trust account); Rule 8.4(b) (committing criminal acts (theft, fraud and forgery) that reflect adversely on his honesty, trustworthiness or fitness as a lawyer);

and Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

 The Board's findings and conclusions are supported by the record. The rule against commingling requires that a lawyer maintain a separate escrow account for entrusted funds of a client or third party. *In re Hessler,* 549 A.2d 700 (D.C. 1988). Here, respondent deposited the settlement checks in the bank account which he used for the deposit of personal and business funds as well as for the deposit of entrusted funds. This account was neither a "trust account" nor "escrow account," as required by the Rule. Respondent has conceded the commingling violation under Rule 1.15(a) and the failure to maintain a trust account under Rule 1.17.

 Further, respondent misappropriated the funds of his clients and the funds entrusted to him to pay the Larteys and their medical service providers, as the Hearing Committee found and the Board adopted. Misappropriation is " 'any unauthorized use of client's funds entrusted to [a lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.' " *In re Pierson,* 690 A.2d 941, 947 (D.C.1997) (quoting *In re Harrison,* 461 A.2d 1034, 1036 (D.C.1983)) (other citations omitted). Improper intent is not required, as it is "essentially a *per se* offense." *Harrison,* 461 A.2d at 1036. Respondent's account balance fell well below the amounts he owed to the Larteys or to their medical providers, and he has never, even up to the time of the hearing, disbursed all of the money owed to them or to their medical providers. Such unauthorized use of a client's funds constitutes misappropriation. *See Pierson,* 690 A.2d at 947; *In re Clarke,* 684 A.2d 1276, 1280 (D.C.1996).

The Board concluded that the misappropriation here was egregious because it was

"accompanied by acts of forgery, fraud, and false statements." The record supports this conclusion. Respondent admits that he signed the Larteys' signatures on the settlement checks. Because he did this without their knowledge, consent, or authority, his actions constitute forgery. The Hearing Committee credited the Larteys' testimony that the receipts which respondent had produced to Bar Counsel were false and that their signatures had been forged.

Respondent also failed to keep his clients reasonably informed about the status of their case and to comply promptly with reasonable requests for information as required by Rule 1.4. In addition, he failed to inform them of the settlement offer, his acceptance of it, and the receipt of the settlement proceeds. We conclude that the violations found in connection with the Larteys' case are fully supported by the record. In his brief before this court, respondent does not challenge substantively the findings and conclusions related to these charges.

## B. *The Robinson Case*

Around July 1996, Michael Ray Robinson retained respondent to represent him in a criminal case before the Circuit Court for Prince George's County, Maryland. The Circuit Court twice denied respondent's request to appear *pro hac vice.* In October 1996, Kelly Woolfolk, Esq., began working for respondent on a part-time basis, and respondent enlisted her agreement to enter an appearance in the case with him. The Circuit Court admitted respondent for the "limited purpose of appearing . . . as co-counsel." About two months later, Ms. Woolfolk took a job with the federal government and informed respondent that she could no longer work for him. Communications concerning the case were sent by the court to respondent's office address, but he did not notify Ms.

Woolfolk. When the court questioned him about her absence at trial, respondent informed the court that he did not know her whereabouts or the reason for her absence. Subsequently, respondent represented falsely to the court that Ms. Woolfolk was ill and that she was in California.

The Circuit Court entered an order for Ms. Woolfolk to show cause why she should not be held in contempt of court for failing to appear at trial. The order was sent to her at respondent's office address, but respondent never notified her. Ms. Woolfolk learned through a friend about the problem in Maryland because of her failure to appear, and the friend suggested that she call the court. Ms. Woolfolk called respondent, who advised her not to worry because he had informed the court that she had a family emergency in California. Respondent encouraged Ms. Woolfolk to back up his story, and dictated a letter to the court containing the false story. Ms. Woolfolk sent the letter to her mother in California with instructions for her to mail the letter to the Circuit Court. At the conclusion of the sentencing in the Robinson case, the court held Ms. Woolfolk in contempt, issued a writ of attachment and set bond at $10,000. This time, respondent informed her of the court's action and directed her to write the court a second letter apologizing with the false explanation that she was still in California. Ms. Woolfolk complied and had the letter sent to the court by facsimile transmission. She requested an opportunity to appear before the court in Maryland and informed respondent of her intention to tell the truth. Respondent told her to "stick with the story and nobody will know." Ms. Woolfolk appeared in court and informed it truthfully about the deception and respondent's knowledge of, and role in it.

The Board accepted the Hearing Committee's conclusions that respondent violat-

ed the following disciplinary rules in connection with the Robinson case: Rule 3.3(a) (knowingly making false statements of material fact to a tribunal); Rule 5.1(b) (failing to make reasonable efforts to ensure that a lawyer under his supervision conformed to the rules of professional conduct); Rule 5.1(c) (responsibility for his subordinate's violations which he ordered or ratified with knowledge of the violation); Rule 8.4(a) (knowingly assisting or inducing another to violate rules of professional conduct); Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); Rule 8.4(d) (engaging in conduct that seriously interferes with the administration of justice). The foregoing factual findings demonstrate respondent's violation of the rules cited. Respondent contends that he would have challenged Ms. Woolfolk's credibility if he had participated in the hearing. Respondent's proffer in his brief before this court comes too late. In light of our disposition of respondent's due process claim, respondent presents no grounds for overturning the findings of the Hearing Committee and the Board with respect to the charges related to these events.

### C. *The Harris Case*

Leland Harris retained respondent to represent him in a civil case in Maryland. Respondent filed a complaint on his behalf purporting to bear the signature of Ms. Woolfolk and her certification that she was a member of the Maryland Bar. Respondent admitted that he signed Ms. Woolfolk's name to the complaint, but he contended that he had her permission to do so. The Hearing Committee found, and the Board accepted, that he filed a false and forged document to corroborate his contentions, consisting of a letter signed with Ms. Woolfolk's name and an affidavit of his administrative manager averring

falsely that Ms. Woolfolk had signed the complaint.

In connection with the Harris case, respondent was charged with violation of the Rules of Professional Conduct of the District of Columbia and/or the Rules of Professional Conduct of Maryland, as made applicable by Rule 8.5(b) of the District's rules as follows: Rule 5.5(a) (practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction); Rule 8.4(a) (violating rules of professional conduct through the acts of another); Rule 8.4(b) (committing criminal acts (forgery and fraud) that reflect adversely on the lawyer's honesty, trustworthiness and/or fitness in other respects); Rule 8.4(c) (engaging in conduct involving fraud, dishonesty, deceit and/or misrepresentation); and Rule 8.4(d) (engaging in conduct that seriously interferes with the administration of justice). The Board's findings and conclusions are supported by the record. Again, respondent challenges the credibility of the witness, Ms. Woolfolk, in this case. This belated attack on her credibility provides no basis for overturning the Board's determination.

### D. *Representation of Marilyn McCall*

Marilyn McCall retained respondent to represent her against the seller of an automobile she had purchased which was defective. Respondent collected $500 from her, and indicated that an additional $500 would be required when the matter went to court. Subsequently, respondent asked for an additional $3000 to litigate her case, but Ms. McCall protested, and respondent agreed to handle the case on a contingency basis. He provided no contingent fee agreement. Respondent filed a complaint on her behalf, and the named defendants filed an answer and counterclaim, which respondent answered. Respondent rejected offers of settlement consisting of a return of her deposit less amounts paid for

insurance and transportation expenses for the period she was without a car. The court dismissed the case when neither respondent nor his client appeared for a scheduling conference. Respondent did not notify his client of the court date, and he never informed her that the case had been dismissed.

The Credit Acceptance Corporation filed an action against Ms. McCall in Maryland in connection with the retail installment contract and security agreement which she had signed when she purchased the car. Respondent failed to return her numerous calls, and she went to his office, and he assured her that the other case remained viable and that he would assist her with this new case. Respondent did not return her calls thereafter, and Ms. McCall did not go to court because she did not want to appear without her lawyer. The Maryland court entered judgment against her in the amount of $5720.35 plus costs and prejudgment interest and attorney's fees in the amount of $935.67. The order provided that she had until January 8, 1998, to file a motion to vacate the judgment, "stating a factual and legal basis for a defense." Ms. McCall was unable to reach appellant, who had moved to another office, until January 7th, but he agreed to prepare the necessary papers which he told her to pick up the next day. She called the next day as instructed, but respondent was not available to take her calls, and the secretary had no knowledge of any documents for her. Respondent did not draft or file documents in the Maryland action, and the Credit Acceptance Corporation commenced garnishment proceedings against Ms. McCall. Not until she filed her ethical complaint did she learn that the action against the seller of the auto had been dismissed. Respondent admitted that he agreed to help Ms. McCall, but he contends that his failure to do so is not actionable because the "case[ ] was not part of the contract she had with me."

The Board agreed that respondent's violations of the following rules were established by the evidence in this matter: Rule 1.3(a) and (c) (failure to represent his client with diligence and zeal within the bounds of the law and/or failure to act with reasonable promptness in representing client); Rule 1.3(b) (intentional failure to seek lawful objectives of client and/or prejudice or damage to client in course of professional relationship); Rule 1.4(a) (failure to keep client reasonably informed about status of her matter and to comply promptly with requests for information); Rule 1.4(c) (failure to inform client promptly of offer of settlement); Rule 1.5(b) and (c) (failure to provide client a writing setting forth basis for fee before or within reasonable time after commencing representation or to provide written contingent-fee agreement stating method for determination of fee). The facts in the McCall matter, as found by the Hearing Committee and summarized above, establish the violations of the foregoing rules.

The Hearing Committee determined, and the Board agreed, that the evidence established that respondent engaged in an impermissible conflict of interest in violation of Rule 1.7(b)(4), when he made unsolicited sexual advances toward Ms. McCall. Respondent contends that the court should discredit Ms. McCall's testimony concerning his improper sexual advances because she failed to raise them in her initial complaint to Bar Counsel. He contends that her charge constitutes a recent fabrication. However, a review of her complaint reveals that she did raise them when she first complained to Bar Counsel. He also points out reasons why her complaint in this regard is implausible (*e.g.*, she never alleged in her statement of complaint or at the hearing that she

screamed). Assessing the credibility of the witness is for the factfinder, here the Hearing Committee. There is nothing inherently incredible about the witness' credibility such that this court can overturn it as a clearly erroneous finding. Accordingly, we must reject respondent's sole challenge to the charges arising out of the McCall matter.

### III. Sanction

 The Hearing Committee recommended, and the Board agreed, that disbarment is the only appropriate sanction, given the finding that respondent misappropriated client funds and the aggravating circumstances. *See In re Addams,* 579 A.2d 190, 191 (D.C.1990). In *Addams,* while rejecting a *per se* rule, we adhered to the presumption that lesser sanctions would be applied for misappropriation only in extraordinary circumstances. *Id.* Such circumstances have been found only in cases where mitigating factors are strong and outweigh any aggravating factors. *Id.* This case presents strong aggravating factors, as the Board found. Indeed, the Board found this to be one of the more aggravated cases of misappropriation that it had ever seen, with the presence of forgery, fraud, and false statements, among other serious violations. No mitigating factors were offered such as admission of wrongdoing, cooperation with Bar Counsel and restitution to the client, as recognized in *In re Johnson-Ford,* 746 A.2d 308, 310 (D.C.2000). Here, respondent admitted some, but far from all the serious violations found, and failed to reimburse his clients for the money that was taken from them or to cooperate with Bar Counsel. "[W]e are required to 'accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" *Id.* (citing D.C. Bar R. XI, § 9(g)(1)) (other citations omitted). There is substantial evidence to support the Board's findings and recommendation; therefore, we adopt it.

THEREFORE, it is

ORDERED that respondent, Chris A. Asher, shall be disbarred from the practice of law in the District of Columbia effective thirty days from the date of this opinion and order. It is further

ORDERED, that in the event that respondent seeks reinstatement to the District of Columbia Bar at some future date, his readmission to practice shall be conditioned, *inter alia,* upon the payment of restitution, with interest, to persons and in amounts to be determined by the Board.