**In re Jay M. BERKOWITZ, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 01–BG–299.**

District of Columbia Court of Appeals.

Submitted Sept. 18, 2001.[1]

Decided June 13, 2002.

1. On September 18, 2001, the date on which the report and recommendation of the Board on Professional Responsibility was originally submitted to this court, we issued an order remanding the matter to the Board for reconsideration in light of our then recent opinions in *In re Anderson*, 778 A.2d 330 (D.C.2001), and *In re Fair*, 780 A.2d 1106 (D.C.2001). After receiving briefs from Bar Counsel and

Before SCHWELB, RUIZ and GLICKMAN, Associate Judges.

PER CURIAM.

The Board on Professional Responsibility recommends that respondent Jay M. Berkowitz be disbarred for intentional misappropriation of funds in violation of Rules 1.15(a) and 1.15(b) of the District of Columbia Rules of Professional Conduct. Neither Bar Counsel nor respondent has taken exception to the Board's report. We accept the Board's findings of fact as they are supported by substantial evidence, and we adopt its recommended disposition. *See In re Addams*, 579 A.2d 190 (D.C. 1990) (en banc); D.C. Bar R. XI, § 9(g)(1). Accordingly, it is hereby

ORDERED that Jay M. Berkowitz is disbarred from the practice of law in the District of Columbia. We direct respondent's attention to the requirements of D.C. Bar R. XI, § 14(g) and their effect on his eligibility for reinstatement. *See* D.C. Bar R. XI, § 16(c).

*So ordered.*

APPENDIX

**DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY**

In the Matter of

JAY M. BERKOWITZ, ESQUIRE,

Respondent

Bar Docket No. 127–97

respondent, the Board issued a supplemental report on April 2, 2002. The supplemental report, which is appended to this opinion, discusses *Anderson* and *Fair* and explains why the Board adheres to its determination of intentional misappropriation and its recommendation of disbarment. The matter is now ready for disposition by this court.

### REPORT ON RECONSIDERATION

On March 8, 2001, the Board issued a Report and Recommendation in which it concluded that Respondent had engaged in misappropriation that was not the result of simple negligence and recommended that Respondent be disbarred. *In re Berkowitz*, Bar Docket No. 127–97, (BPR March 8, 2001). Neither Respondent nor Bar Counsel filed exceptions with the Court and the Report was placed on the Court's summary calendar for September 18, 2001.

By Order dated September 18, 2001, the District of Columbia Court of Appeals (the "Court") remanded this matter to the Board for reconsideration of its recommendation in light of the Court's opinions in *In re Anderson*, 778 A.2d 330, (D.C.2001) and *In re Fair*, 780 A.2d 1106 (D.C.2001). By Order dated September 21, 2001, the Board requested briefs from Bar Counsel and Respondent on the issues of (i) whether a finding of misappropriation is appropriate; (ii) if so, whether the misappropriation was intentional, reckless or negligent; and (iii) the appropriate sanction. Bar Counsel urges a finding of intentional misappropriation and a recommendation of disbarment. Respondent in his brief acknowledges that a misappropriation occurred [2], but contends that sanction should be suspension for one year.

### Summary of Facts

The facts of this case were undisputed. Bar Counsel and Respondent stipulated as to the essential facts. Bar Counsel submitted exhibits which were admitted without objection. Respondent's counsel participated in the hearing before the Hearing Committee, but Respondent himself was not present and did not testify.

The Board's Report set forth the findings made by the Hearing Committee. Respondent was retained by a Ms. Wilson to represent Ms. Costin, who was then appointed a successor personal representative to the Estate of Robert O. Costin. The original representative, Ms. Crystal Hill, had petitioned to resign due, in part, to disputes with Ms. Wilson and Ms. Costin. Under his written fee arrangement with Ms. Wilson, Respondent was to be paid from non-estate funds.

On March 1, 1996, about nine months after he was retained, as a result of a request he made for funds he believed she was holding, Respondent received from Ms. Hill, the original personal representative, a check in the amount of $357.64 payable to "Estate of Robert O. Costin." Respondent deposited this check into his firm's escrow account the date he received it.

On March 29, 1996, Respondent withdrew this money from the escrow account and deposited it into his firm's operating account.[3] On the same day, he submitted an invoice to Ms. Wilson showing an outstanding balance of $1,181.61 and total payments of $1,000 (reflecting a $1,000 money order he had received on about March 6, 1996). This invoice did not disclose the receipt of the $357.64. On April 30, 1996 and for seven months thereafter,

---

2. Respondent contends that the initial violation was commingling and that the misappropriation occurred after Bar Counsel's investigation commenced, when Respondent credited the client's bill and returned the money at issue. Respondent's Brief in Response to the Order of the Board on Professional Responsibility ("Resp. Brief") at 3–4.

3. Neither he nor his client had petitioned the Probate Court for permission for him to receive estate funds to pay his legal fees; at this time, Mr. Costin's estate was governed by the Probate Reform Act of 1980, which required court approval prior to payment of estate funds for legal fees.

Respondent submitted monthly invoices to Ms. Wilson showing outstanding balances on fees; none of these invoices showed or credited the $357.64 payment for outstanding fees.

On April 21, 1996, Respondent sent a proposed inventory of the estate to Ms. Wilson, for signature by Ms. Costin, the successor personal representative. This inventory did not disclose the $357.64 which Respondent had received. The inventory was signed by Ms. Costin and filed with the Probate Division. On December 5, 1996, the Probate Division removed Ms. Costin as personal representative for failure to file her first account and appointed a successor personal representative.

Ms. Hill, the first personal representative, filed a complaint against Respondent with Bar Counsel on or about March 3, 1997. Respondent submitted his response on March 24, 1997. On May 1, 1997, Bar Counsel sought additional information, to which Respondent responded on May 12, 1997.

On May 23, 1997, Respondent submitted a bill to Ms. Wilson which reflected—for the first time—a payment of $357.64. By letter of May 27, 1997, Bar Counsel sent Respondent a copy of Ms. Hill's check for $357.64 and inquired about the handling of this money.

By letter of June 5, 1997, Respondent asked for an additional 30 days to respond to the May 27 letter and advised that he was leaving the practice of law effective June 30, 1997.

By letter dated July 18, 1997, Respondent advised Bar Counsel that he had retained counsel, who was to be on vacation until July 27, 1997. In another letter written that same day, Respondent sent the successor personal representative for the estate a letter enclosing a personal check in the amount of $357.64 payable to the "Estate of Robert Costin." In the letter, Respondent stated that the $357.64 was "inadvertently never transferred to the Estate or accounted for while I was attorney for Ms. Costin."

By letter of August 11, 1997, Respondent's counsel advised Bar Counsel as follows with respect to the $357.64:

> The check was deposited in the law firm's escrow account at the time it was delivered to the firm since Mr. Berkowitz was unable to determine or verify whether or not Ms. Costin, the successor personal representative, had set up an estate account. Inadvertently, the money was transferred to Mr. Berkowitz's law firms' [sic] operating account on March 29, 1996 (see enclosed copy of check) and was applied to fees and costs that were incurred in this matter. Mr. Berkowitz has sent a check made out to the Estate of Robert Costin in the amount of $357.64 to Barry Friedman the personal representative of the estate.

On August 22, 1997, Respondent filed a request for compensation in the amount of $357.64 with the Probate Court. In the request, Respondent listed by date and description services totaling $1,066.25, but requested that the fees be reduced to $357.64. As to that amount, the request stated:

> On or about February 18, 1996 I received a check from Crystal Hill prior personal representative of the estate in the amount of Three Hundred Fifty Seven Dollars and Sixty Four Cents ($357.64). This amount inadvertently was not accounted for with the filing of the inventory of the estate and was applied to the fees I incurred without submitting a request to this Court for attorney fees. This amount has been sent to

Barry A. Friedman current personal representative of the estate.

The request was notarized. The request did not, however, advise the Probate Division that in March 1996 Respondent had received $1,000 from Ms. Costin from her personal funds as partial payment for his legal services, nor did the services itemized in the request include all the time for which Ms. Wilson had previously been billed. The request also did not disclose that Respondent's agreement with Ms. Wilson was for his fees to be paid out of non-estate funds. On October 6, 1997, the Probate Division granted Respondent's request for compensation, and on November 25, 1997, the successor personal representative forwarded to Respondent $357.64 pursuant to the Probate Court's Order.

The stipulation entered into between Respondent and Bar Counsel contained the following:

> Respondent acknowledges and agrees that he violated Rules 1.15(a) and (b) by not notifying Ms. Costin of the receipt of the $357.64 check from the Complainant and by transferring same from Respondent's escrow account to his firm's operating account without prior court approval.

### The Board's Report

Based upon the record, the Board concluded that Respondent had violated Rules 1.15(a) and 1.15(b) by misappropriating the $357.64.

On the question of sanction, the Board rejected Respondent's contention that his misappropriation was "inadvertent." The Board rested this conclusion on the mistaken view that Respondent had the burden of establishing that the misappropriation resulted from nothing more than simple negligence. The fact that Respondent had not testified was important to the Board:

> Respondent made the decision not to appear at the hearing and testify to the events that occurred. That decision, which he was free to make, meant that the Hearing Committee had no opportunity to assess his credibility. All the record contains to establish his contention of negligence are his written assertions of inadvertence. . . .

Board Report at 12. Viewing the facts in the record against facts in the Court's previous misappropriation cases, the Board concluded that Respondent had failed to demonstrate that the misappropriation was the result of simple negligence, thereby indicating that disbarment was mandatory under *In re Addams*, 579 A.2d 190 (D.C.1990) (*en banc*).

### The Court's Decisions in In re Anderson and In re Fair

In *Anderson*, 778 A.2d at 330, the Court confirmed that Bar Counsel bears the burden of proving not only the elements of misappropriation but also the level of culpability necessary to invoke the presumption of disbarment set out in *Addams*, 579 A.2d at 190.[4] Relying on earlier decisions, the Court identified the characteristics of misappropriation that would be considered "more than simple negligence":

4. The Court stated:
   The *Addams* sanction of near-automatic disbarment for misappropriation resulting from more than negligence is a strict one; it should not be triggered, in our judgment, solely by proof by Bar Counsel—even by clear and convincing evidence—that the attorney let the funds in his operating account drop below the obligated level, leaving it to him to prove that he lacked the requisite intent or level of culpability. *Anderson*, 778 A.2d at 337.

The hallmarks of such misconduct revealed by our cases include: the indiscriminate commingling of entrusted and personal funds; a complete failure to track settlement proceeds; total disregard of the status of accounts into which entrusted funds were placed, resulting in a repeated overdraft condition; the indiscriminate movement of monies between accounts; and the disregard of inquiries concerning the status of funds. All of these actions reveal an intent by the attorney 'to deal with and use funds escrowed for clients as his own,' or an unacceptable disregard to the security of client funds.

\* \* \*

These and other decisions demonstrate that the central issue in determining whether a misappropriation is reckless is *how* the attorney handles entrusted funds, whether in a way that suggests the unauthorized use was inadvertent or the result of simple negligence, or in a way that reveals either an intent to treat the funds as the attorney's own or a conscious indifference to the consequences of his behavior for the security of the funds.

*Id.* at 338, 339 (internal citations omitted).

In *Anderson,* the Court also discussed its prior decision in *In re Thompson,* 579 A.2d 218 (D.C.1990), where it considered the impact of a respondent's explanation of—or failure to explain—his or her use of client funds. The Court in *Anderson,* quoting *Thompson,* stated:

'[T]he Board may weigh, together with all of the other evidence, an attorney's explanation for—or conversely inability to explain satisfactorily—the use of a client's funds in deciding whether Bar Counsel has met its burden of proving

dishonest misappropriation by clear and convincing evidence.'

*Anderson,* 778 A.2d at 336–37 (internal citation omitted).

Again, quoting *Thompson,* the Court stated:

'Bar Counsel may properly offer the inadequacy (or non-existence) of the attorney's explanation for the use of client funds as one significant—and even decisive—factor in proving dishonest misappropriation', but it [the *Thompson* Court] limited the significance of that explanation 'to circumstantial evidence which the Board may consider', along with all the other evidence, in determining whether Bar Counsel has proven dishonesty by clear and convincing evidence.'

*Id.* at 337 (internal citations omitted).

In *Fair,* 780 A.2d at 1106, the other recent decision to which the Court directed the Board in its remand order, the respondent was personal representative and attorney for an estate. She made partial payments to herself of fees from estate assets totaling $6,600 without prior court approval, which was required at that time. Once court approval was obtained, she overpaid herself by almost $600. The Court concluded that in this "rather peculiar case," Bar Counsel had not established by clear and convincing evidence that the payments constituted "intentional and/or reckless" misappropriations such as to fall within the disbarment rule of *Addams.*

As to taking the fee without prior authorization, the Court noted that, less than a year after respondent had paid herself the unauthorized fee, the legislature eliminated the need for prior court approval. *Id.* at 1111. Further, the Court relied on evidence in the record that at the time of respondent's actions, there was an actual probate practice of payment of fees without prior approval. *Id.* In these circum-

stances, the Court found that Bar Counsel had not established the "type of intentional or reckless misconduct ... that clearly brings respondent within the *Addams* disbarment rule." *Id.* at 1113.

As to the second instance of misappropriation—the overpayment by $600—the Court ruled that the Board had erred in concluding that the record showed the overpayment to have been reckless. The Court was concerned about the "thinness of the record" with respect to respondent's record-keeping practices and "the relationship between record-keeping or lack thereof and the overpayment." *Id.* The Court found that the evidence did not meet the standard of recklessness as articulated in *Anderson*.[5]

### Re-examination in Light of Anderson and Fair

The Board has reviewed the record in light of the Court's decisions in *Anderson* and *Fair*, and concludes that Bar Counsel satisfied her burden of establishing intentional and/or reckless misappropriation by clear and convincing evidence.

*Misappropriation.* The Board confirms its prior conclusion that Respondent misappropriated the $357.64. The Court defines misappropriation as "any unauthorized use of client's funds entrusted to [a lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983) (quoting *In re Wilson*, 81 N.J. 451, 409 A.2d 1153, 1155 n. 1 (1979)).

In *Fair*, the Court confirmed that it was misappropriation to take legal fees prior to

Court approval. *Fair*, 780 A.2d at 1110 (citing *In re Utley*, 698 A.2d 446 (D.C. 1997)). Respondent's action in taking estate funds as legal fees was also misappropriation in that it violated his agreement with Ms. Wilson that his fees would be paid from non-estate funds. In shifting the $357.64 from his escrow account to his firm's operating account, without authorization by either the Court or his client, he committed misappropriation. *See, e.g., Addams*, 579 A.2d at 190 (unauthorized withdrawal of funds from trust account for legal fees held to constitute misappropriation).

In his brief to the Board on remand, Respondent argues that Bar Counsel is using his return of the $357.64 to the successor personal representative and his petition for Court approval of his fees as evidence of misappropriation and that, prior to Bar Counsel's inquiry, Respondent had been guilty only of commingling. Resp. Brief at 3–4. Contrary to Respondent's argument, the misappropriation was complete when Respondent took the $357.64 in estate funds as his attorney's fees on March 29, 1996. Regardless of whether the funds were later returned, Respondent's action in taking the estate funds without Court approval and in contravention of his fee agreement with Ms. Wilson constituted misappropriation.

*Level of Culpability.* In our view, the facts compel the conclusion that Respondent chose to "treat the funds as [his] own," thereby establishing the level of culpability contemplated by the *Addams* rule.[6] *Anderson*, 778 A.2d at 339. First, despite his agreement with Ms. Wilson that his fees would be paid from non-estate funds, he removed the $357.64 from his

---

**5.** *See Anderson,* 778 A.2d at 330.

**6.** The relatively small amount of money involved does not take the case out of the *Ad-*

dams' prescription of disbarment. *In re Robinson,* 583 A.2d 691, 692 (D.C.1990) (per curiam).

firm's escrow account—where the monies were first placed—and deposited them into his firm's operating account. He did this on the same day, March 29, 1996, that he rendered an invoice to Ms. Wilson for legal fees that did not disclose a payment in like amount. Second, each month thereafter for eight months, he rendered bills to Ms. Wilson for attorney's fees without ever disclosing the fact that he had received this money. Third, he failed to include the $357.64 in the inventory for the estate, thereby effectively concealing the fact that he had received the $357.64. Indeed, from the viewpoint of his client, Ms. Wilson, Ms. Costin, the personal representative, and the Probate Court, the $357.64 which Respondent had received from the original personal representative did not exist. By his actions, Respondent concealed from all interested parties the facts that he had received the $357.64 and that, rather than holding the funds in trust, he had used them as a payment of his legal fees.

The existence of this money was not disclosed by Respondent until after Bar Counsel commenced an investigation into Respondent's handling of the probate representation. Respondent then returned the funds, but when he later applied for approval of the $357.64 by the Probate Court, he did so in violation of his agreement with Ms. Wilson that his fees would be paid from non-estate funds.

Respondent suggests that his efforts—after Bar Counsel initiated its inquiry into his handling of the estate—to correct his mistakes should not be used to·worsen his position. Resp. Brief at 3. Respondent's return of the $357.64 is a mitigating factor, but it does not excuse Respondent's misappropriation, *In re Pierson*, 690 A.2d 941, 950 (D.C.1997); *In re Clarke*, 684 A.2d 1276 (D.C.1996), nor does it qualify for treatment as special circumstances under

*Addams* allowing for departure from disbarment as the prescribed sanction. *Addams*, 579 A.2d at 191. Respondent's petition to the probate court is, if anything, an aggravating factor, in that it conflicted with his fee agreement with Ms. Wilson, which provided for payment from non-estate funds.

Finally, under *Thompson*, the Board does consider Respondent's failure adequately to explain his handling of the money as circumstantial evidence of his culpability. 579 A.2d at 218. In at least two cases in addition to *Thompson*, the Court has considered respondent's failure adequately to explain the use of trust money. *See In re Godfrey*, 583 A.2d 692 (D.C.1990) (per curiam) (no testimony or explanation from respondent); *In re Burton*, 472 A.2d 831 (D.C.1984) (per curiam), *cert. denied*, 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984) (respondent's testimony claiming inadvertence not sufficient in light of subsequent conduct). Respondent had the opportunity to testify, and he chose not to do so, leaving the Hearing Committee and the Board with only his conclusory assertions of inadvertence.

*Anderson* made clear that the burden of proving a respondent's intent must remain with Bar Counsel. Thus, a respondent's failure to explain the use of trust funds cannot, by itself, satisfy Bar Counsel's burden of proof. But where, as here, Bar Counsel has presented evidence that Respondent's misappropriation was intentional, Respondent's failure to offer anything other than conclusory assertions of inadvertence is a factor that bears on the ultimate issue of intent. In this case, the undisputed facts showing that Respondent treated the money as his own preclude a conclusion that his misappropriation was the result of "inadvertence" or simple negligence. As the Hearing Committee stated, "drawing a check for the exact amount

of funds received is not an act which can be described as merely negligent." H.C. Rpt. at 13–14. · Similarly, Respondent's action on the same day he drew the check of sending out an invoice for legal fees to Ms. Wilson, without disclosing receipt of fees is inconsistent with the proposition that the misappropriation was "inadvertent." *Cf. Burton*, 472 A.2d at 831. Other evidence pointing in the direction of intentionality includes Respondent's actions in effectively concealing his receipt of the money by failing to reflect it on numerous bills to his client and by failing to include it in the estate inventory. *See e.g., In re James*, 452 A.2d 163, 166 (D.C.1982) (scienter can be inferred from respondent's conduct); *Clarke*, 684 A.2d at 1280–81 (circumstantial evidence that misappropriation was dishonest).

The Board also concludes that the Court's decision in *Fair*, 780 A.2d at 1106, does not suggest a different result. First, although Respondent did take the $357.64 as a fee without approval by the probate court, we do not consider that fact as evidence of intentionality; instead, we rely upon Respondent's other actions which effectively concealed his receipt of the money from Ms. Wilson and the successor personal representative, Ms. Costin. Second, while the Court in *Fair* found the evidence thin regarding Respondent's intent as to the $600 which she overpaid herself by mistake, here we believe that the record is clear and convincing that Respondent intended to keep the $357.64 as his own. His conclusory protestations of inadvertence do not alter the fact that, contrary to his fee agreement, he applied estate funds to his legal fees and concealed this action for many months by failing to reflect the $357.64 either on a series of invoices for fees or on the inventory of the estate. There can be little doubt that, but

for Bar Counsel's investigation, Respondent never would have disclosed his receipt of this money.

We also note Respondent's prior disciplinary record, which includes two instances of misuse of client funds. In *In re Berkowitz*, 702 A.2d 683 (D.C.1997) (per curiam), Respondent was found to have negligently misappropriated client funds when he used them for payment of firm obligations. The inquiry giving rise to this prior discipline occurred at the same time that Respondent misappropriated the $357.64 at issue here. In addition, as brought to the attention of the Board subsequent to the Hearing Committee Report, in 1992, Respondent received an informal admonition for disbursing fees to himself from a settlement check without obtaining advance approval from his client. This prior discipline confirms the conclusion that disbarment is the appropriate remedy here.

### Conclusion

For the reasons stated above, the Board concludes that Respondent is subject to the disbarment rule of *Addams*, and recommends that he be disbarred for intentional misappropriation.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: Timothy J. Bloomfield

Vice Chair

Dated: April 2, 2002

All members of the Board concur in this Report and Recommendation except Ms. Ossolinski, who did not participate.